FRANK TYSON *v.* COMMISSIONER OF CORRECTION
(SC 16550)

Sullivan, C. J., and Norcott, Katz, Palmer and Zarella, Js.

Argued April 23—officially released October 29, 2002

*Steven R. Strom,* assistant attorney general, with whom, on the brief, was *Richard Blumenthal,* attorney general, and *Ann E. Lynch,* assistant attorney general, for the appellant (respondent).

*Sandra J. Crowell,* deputy assistant public defender, with whom, on the brief, were *Temmy Ann Pieszak,* chief of habeas corpus services, and *Judith M. Wild-feuer,* deputy assistant public defender, for the appel-lee (petitioner).

*Opinion*

ZARELLA, J. The petitioner, Frank Tyson, was sentenced on July 24, 1998, to concurrent terms of imprisonment for carrying a pistol without a permit in violation of General Statutes (Rev. to 1997) § 29-35 (a) and violating the conditions of his probation. See General Statutes (Rev. to 1997) § 53a-32. The petitioner committed the former crime after October 1, 1994. The conditions of probation that the petitioner was found to have violated, however, were established in connection with a sentence imposed for the petitioner's conviction

of certain crimes committed before October 1, 1994.[1] The significance of October 1, 1994, is that a person who has committed a crime on or after that date and who is sentenced to a term of imprisonment in connection with a conviction of such a crime is not entitled to earn good time credit, which serves to accelerate the date of release from confinement. *Velez* v. *Commissioner of Correction*, 250 Conn. 536, 552, 738 A.2d 604 (1999) ("good time statutes [are] inapplicable to persons sentenced to a term of imprisonment for crimes committed on or after October 1, 1994"); see General Statutes § 18-100d.[2] Persons sentenced for crimes committed before October 1, 1994, however, remain entitled to such good time credit. See *Rivera* v. *Commissioner of Correction*, 254 Conn. 214, 217 n.2, 756 A.2d 1264 (2000). The dispositive issue in the present case, therefore, is which of the petitioner's two concurrent sentences governs his release date: the pre-1994 sentence or the post-1994 sentence.

The respondent, the commissioner of correction (commissioner), claims that, because the petitioner had finished serving his pre-1994 sentence, which was reduced by statutory good time credit, as of February 15, 2001, the petitioner's post-1994 sentence, which would not have been completed until January 15, 2002, had "the longest term to run . . . ." General Statutes § 53a-38 (b) (1)[3] (concurrent sentences "satisfied by

[1] We refer throughout this opinion to the sentence that was imposed in connection with the petitioner's violation of the conditions of his probation as the pre-1994 sentence. See footnote 6 of this opinion. We refer to the sentence that was imposed in connection with the petitioner's conviction of carrying a pistol without a permit as the post-1994 sentence.

[2] General Statutes § 18-100d provides: "Notwithstanding any other provision of the general statutes, any person convicted of a crime committed on or after October 1, 1994, shall be subject to supervision by personnel of the Department of Correction or the Board of Parole until the expiration of the maximum term or terms for which he was sentenced."

[3] General Statutes § 53a-38 (b) provides in relevant part: "A definite sentence of imprisonment commences when the prisoner is received in the custody to which he was sentenced. Where a person is under more than

discharge of the term which has the longest term to run"). We agree with the commissioner and, therefore, reverse in part the judgment of the habeas court and remand the matter with direction to render judgment denying count one of the petitioner's amended petition for a writ of habeas corpus.

The material facts are not in dispute. In 1991, the petitioner engaged in certain conduct that resulted in his conviction of assault in the first degree in violation of General Statutes (Rev. to 1991) § 53a-59 (a) (3) and assault in the second degree in violation of General Statutes (Rev. to 1991) § 53a-60 (a) (3). On June 18, 1993, the petitioner was sentenced to fifteen years imprisonment, suspended after eight years, and three years probation, in connection with his conviction of assault in the first degree. The petitioner was sentenced to a concurrent term of five years imprisonment in connection with his conviction of assault in the second degree. After serving his terms of imprisonment,[4] the petitioner was released and began serving his three year term of probation.

In March, 1998, while serving his term of probation, the petitioner was arrested and charged with, inter alia, carrying a pistol without a permit in violation of General Statutes (Rev. to 1997) § 29-35 (a). Thereafter, on April 23, 1998, the petitioner was charged in a separate information with violating the conditions of his probation. See General Statutes (Rev. to 1997) § 53a-32.[5]

one definite sentence, the sentences shall be calculated as follows: (1) If the sentences run concurrently, the terms merge in and are satisfied by discharge of the term which has the longest term to run . . . ."

[4] The petitioner served less than eight years in prison from the date of conviction owing to the fact that the petitioner had earned presentence confinement credit and good time credit in connection with his sentence.

[5] General Statutes (Rev. to 1997) § 53a-32 provides in relevant part: "(a) At any time during the period of probation . . . the court or any judge thereof may issue a warrant for the arrest of a defendant for violation of any of the conditions of probation . . . . [U]pon an arrest by warrant as herein provided, the court shall cause the defendant to be brought before

On June 10, 1998, the petitioner admitted to violating the conditions of his probation. Thereafter, on July 24, 1998, the petitioner pleaded guilty to the charge of carrying a pistol without a permit and was sentenced to a term of imprisonment of three years and ten months in connection with that charge (post-1994 sentence). With respect to the charge of violating the conditions of probation, the petitioner's probation was revoked in accordance with § 53a-32 (b) (4), and a sentence of four years imprisonment was imposed (pre-1994 sentence).[6] These sentences were to run concurrently.

Upon the petitioner's commitment to the custody of the commissioner, the commissioner calculated the petitioner's presentence confinement credit for both sentences and his presentence good time credit for the pre-1994 sentence. On the basis of the commissioner's

it without unnecessary delay for a hearing on the violation charges. At such hearing the defendant shall be informed of the manner in which he is alleged to have violated the conditions of his probation . . . .

"(b) If such violation is established, the court may . . . (4) revoke the sentence of probation . . . . If such sentence is revoked, the court shall require the defendant to serve the sentence imposed or impose any lesser sentence. No such revocation shall be ordered, except upon consideration of the whole record and unless such violation is established by the introduction of reliable and probative evidence and by a preponderance of the evidence."

[6] A sentence imposed in connection with the violation of the conditions of probation constitutes a continuation of the sentence imposed for the crime of which the probationer originally was convicted and sentenced. Although the petitioner's violation of the conditions of his probation occurred after October 1, 1994, the sentence imposed in connection with that violation was for crimes committed in 1991, namely, assault in the first degree and assault in the second degree. Thus, the sentence imposed for the petitioner's violation of the conditions of his probation is a pre-1994 sentence. See, e.g., *State* v. *Smith*, 207 Conn. 152, 178, 540 A.2d 679 (1988) ("The element of 'punishment' in probation revocation . . . is attributable to the crime for which [the probationer] was originally convicted and sentenced. Thus, any sentence [that a probationer must] serve as [a] result of the violation of the . . . condition[s] [of probation is] 'punishment' for the crime of which he had originally been convicted. Revocation is a continuing consequence of the original conviction from which probation was granted.").

initial calculations, the dates on which the petitioner could expect to be released from confinement with respect to the pre-1994 and post-1994 sentences were March 20, 2002, and January 15, 2002, respectively. Thus, upon the petitioner's commitment to the custody of the commissioner in 1998, the pre-1994 sentence had the longer term. As of February 1, 1999, however, the petitioner had earned additional good time credit in connection with his pre-1994 sentence, and, consequently, the release date for the pre-1994 sentence had changed from March 20, 2002, to January 7, 2002. The petitioner continued to earn good time credit and his pre-1994 sentence was completed on February 15, 2001, at which point the post-1994 sentence still had 334 days remaining. Thus, at all times after February 1, 1999, the post-1994 sentence had the longest term to run.

In January, 1999, the petitioner filed a pro se petition for a writ of habeas corpus, claiming that the commissioner had calculated his estimated date of release from confinement improperly inasmuch as the petitioner was not being credited with "good time under old law." On June 7, 2000, following the appointment of counsel, the petitioner filed a two count amended habeas petition. In count one, the petitioner claimed that his pre-1994 sentence was "the controlling sentence for the purposes of calculating [his] statutory good time and release date because it [was] the longer of the two sentences [that he] was ordered to serve by the trial court on July 24, 1998." In support of his claim, the petitioner relied on General Statutes § 53a-38 (b) (1), which provides that, when two or more sentences are to run concurrently, "the terms merge in and are satisfied by discharge of the term which has the longest term to run . . . ." The petitioner claimed that because the pre-1994 sentence had the longer term to run *on the date of sentencing*, it became the controlling sentence for the purpose of determining the petitioner's release date. The commis-

sioner disagreed, contending that because the term of the petitioner's pre-1994 sentence was reduced as the petitioner earned good time credit in connection with that sentence, the post-1994 sentence had the longer term to run as of February 1, 1999, and, therefore, had become the controlling sentence for the purpose of calculating the petitioner's release date.

In count two of his amended habeas petition, the petitioner alleged that he had been deprived of his state and federal due process rights as a result of the commissioner's failure to consider the pre-1994 sentence, under which the petitioner was entitled to accumulate good time credit, as the controlling sentence for the purpose of calculating the petitioner's release date. The petitioner framed his claim in count two in terms of a failure on the part of the state to honor the terms of the bargain to which the petitioner agreed when he pleaded guilty to carrying a pistol without a permit and admitted to violating the conditions of his probation in 1998.

The commissioner moved to dismiss both counts of the amended habeas petition. On July 13, 2000, the habeas court, *Devlin, J.*, granted the commissioner's motion as to count one of the petition but denied the motion as to count two. In granting the commissioner's motion to dismiss count one, the habeas court relied on the Appellate Court's decision in *Valle* v. *Commissioner of Correction*, 45 Conn. App. 566, 696 A.2d 1280 (1997), rev'd on other grounds, 244 Conn. 634, 711 A.2d 722 (1998), in which the Appellate Court upheld a habeas court's determination that the commissioner should have considered the effect of presentence confinement credit on two separate, four year sentences in determining which one of the two sentences had the longest term to run within the meaning of § 53a-38 (b) (1). See id., 570. Relying on *Valle*, the habeas court in the present case determined that "the commissioner . . . should apply § 53a-38 to concurrent sentences by

separately calculating the release dates for each sentence and then selecting the latest date as the effective release date." Noting that the commissioner "did just that" in the present case, the habeas court concluded that the petitioner could not prevail, as a matter of law, on his claim that his pre-1994 sentence was the controlling sentence for the purpose of determining his release date. The habeas court denied the commissioner's motion to dismiss count two of the amended habeas petition, however, owing to the existence of unresolved factual issues.

On February 7, 2001, the petitioner filed a motion to reconsider the habeas court's dismissal of count one of the amended habeas petition on the basis of this court's August 15, 2000 decision in *Rivera* v. *Commissioner of Correction*, supra, 254 Conn. 214. The court, *Devlin, J.*, granted the petitioner's motion on February 15, 2001.

The habeas court then held an evidentiary hearing on February 23, 2001. Mary Jane Steele, a records specialist employed by the department of correction, testified that the commissioner had estimated the petitioner's release date for his pre-1994 sentence immediately following his commitment to the custody of the commissioner in 1998. According to Steele, the petitioner's estimated release date for his pre-1994 sentence was calculated under the "assumption" that he would behave appropriately and earn all available good time credit during the duration of his sentence. Due to the inclusion of estimated statutory good time credit in the calculation of the petitioner's estimated release date for his pre-1994 sentence, the estimated release date for that sentence was accelerated, thereby rendering the term under that sentence shorter than the term to run under the post-1994 sentence. According to Steele, this provided the basis for treating the petitioner's post-1994 sentence as the controlling sentence. Steele also testi-

fied, however, that the pre-1994 sentence could have become the controlling sentence if the petitioner had failed to earn good time credit or had forfeited good time credit previously earned.

The habeas court, relying primarily on our decision in *Rivera* v. *Commissioner of Correction*, supra, 254 Conn. 214, concluded that the commissioner "incorrectly [had] calculated [the petitioner's] term of imprisonment," and, therefore, the petitioner was "entitled to have his sentence recalculated." As to count two of the amended habeas petition, however, the habeas court found in favor of the commissioner because "the petitioner ha[d] failed to prove that his plea bargain included an agreement that one of his two concurrent sentences [would] be controlling for purposes of calculating his release date."[7]

The habeas court determined that it is the function of the commissioner, "in construing multiple terms of concurrent imprisonment as one continuous term . . . to merge the concurrent sentences and determine the prisoner's discharge by the term of the sentence [that] has the longest term to run." The habeas court recognized that this function was complicated in the present case by virtue of the fact that the petitioner's pre-1994 sentence was governed by General Statutes § 18-7a (c)[8] whereas his post-1994 sentence was governed by § 18-

[7] The habeas court's ruling on count two of the amended habeas petition is not at issue in this appeal.

[8] General Statutes § 18-7a (c) provides in relevant part: "Any person sentenced to a term of imprisonment for an offense committed on or after July 1, 1983, may, while held in default of bond or while serving such sentence, by good conduct and obedience to the rules which have been established for the service of his sentence, earn a reduction of his sentence as such sentence is served in the amount of ten days for each month served and pro rata for a part of a month served of a sentence up to five years, and twelve days for each month served and pro rata for a part of a month served for the sixth and each subsequent year of a sentence which is more than five years. . . ."

100d.[9] The habeas court also noted that § 18-7a (c) eliminated the prior practice of "posting," whereby department of correction personnel would estimate and credit statutory good time at the beginning of a prisoner's sentence on the basis of the term of imprisonment imposed by the sentencing court.[10] See generally *Seno* v. *Commissioner of Correction*, 219 Conn. 269, 275–76, 593 A.2d 111 (1991). The habeas court concluded that the commissioner had, in effect, engaged in posting, a practice that had been abolished by the legislature in 1982 through the enactment of Public Acts 1982, No. 82-379, § 1, codified as amended at General Statutes § 18-7a. *Seno* v. *Commissioner of Correction*, supra, 280; see General Statutes § 18-7a (c); see also *Rivera* v. *Commissioner of Correction*, supra, 254 Conn. 239.

The habeas court thus determined that the method that the commissioner used in calculating the petitioner's release date was flawed. Relying on our decision in *Rivera*, the habeas court proposed that the commissioner, instead, should have "merge[d] the [petitioner's] concurrent sentences without reference to estimated good time." Under this approach, the petitioner's pre-1994 sentence, which had an estimated release date of

[9] See footnote 2 of this opinion.

[10] For example, under the practice of posting, a person sentenced to one year imprisonment for a crime committed in 1982 would receive 120 days credit—ten days for each month—upon being placed in the custody of the commissioner, resulting in an approximate net term of eight months imprisonment. See General Statutes § 18-7a (b). If that same person were required to earn good time credit as he serves his sentence, whereby statutory good time credit would be applied on a monthly basis, he would end up serving more time, approximately nine months under the foregoing hypothetical. By eliminating the practice of posting, the legislature sought to have the commissioner calculate statutory good time credit on the basis of time served as opposed to the length of the sentence imposed. *Seno* v. *Commissioner of Correction*, 219 Conn. 269, 278–80, 593 A.2d 111 (1991). In abolishing the practice of posting, the legislature sought to eliminate a system through which prisoners would receive good time credit for time never served. Id., 278.

March 20, 2002, before consideration of any statutory good time credit that could be earned while serving that sentence, would have been the controlling sentence when the petitioner was committed to the custody of the commissioner.[11] Consequently, the habeas court ordered the commissioner to recalculate the petitioner's release date using the petitioner's pre-1994 sentence as the controlling sentence and rendered judgment granting the petitioner's amended habeas petition as to count one and denying the petition as to count two.

Upon the granting of certification, the commissioner appealed from the judgment of the habeas court to the Appellate Court. We thereafter transferred the appeal to this court pursuant General Statutes § 51-199 (c) and Practice Book § 65-1.

We begin our analysis with a discussion of the appropriate standard of review. Although a habeas court's findings of fact are reviewed under a clearly erroneous standard of review, questions of law are subject to plenary review. E.g., *Duperry* v. *Solnit*, 261 Conn. 309, 318, 803 A.2d 287 (2002); *Morrison* v. *Commissioner of Correction*, 57 Conn. App. 145, 147, 747 A.2d 1058, cert. denied, 253 Conn. 920, 755 A.2d 215 (2000). Because the material facts are not in dispute and the issue before us presents a pure question of law, our review is plenary. See, e.g., *Cupe* v. *Commissioner of Correction*, 68 Conn. App. 262, 267, 791 A.2d 614, cert. denied, 260 Conn. 908, 795 A.2d 544 (2002).

---

[11] The habeas court suggested that even if, at some point after the petitioner had started serving his sentences, he were to have earned enough good time credit in connection with his pre-1994 sentence so as to render that sentence the shorter of the two sentences, the post-1994 sentence would not then become the controlling sentence and govern the petitioner's release date. The court stated: "If the petitioner is . . . rewarded for good behavior by earning good time [once he begins serving his sentence], then he is entitled to it. If such good time advances his release date to a point earlier than January 15, 2002, [the date of release for the post-1994 or noncontrolling sentence] then such a result is the product of the concurrent sentencing approach . . . ." (Internal quotation marks omitted.)

Our resolution of this appeal requires us to harmonize the various statutes involved to produce a reasonable statutory scheme that carries out the apparent intent of the legislature. See, e.g., *Vernon Village, Inc.* v. *Carothers*, 217 Conn. 130, 137, 585 A.2d 76 (1991); *In re Sheldon G.*, 216 Conn. 563, 578, 583 A.2d 112 (1990). We begin, therefore, by providing an overview of the relevant good time credit statutes and the development of the relevant case law.

The legislature has changed the method by which good time credit is calculated on several occasions since 1976. General Statutes § 18-7[12] applies to all sentences imposed prior to October 1, 1976. General Statutes § 18-7a (a)[13] applies to sentences imposed between

[12] General Statutes § 18-7 provides in relevant part: "Any prisoner sentenced to a term of imprisonment prior to October 1, 1976, may, by good conduct and obedience to the rules of said institution, earn a commutation or diminution of his sentence, as follows: Sixty days for each year, and pro rata for a part of a year, of a sentence which is not for more than five years; and ninety days for the sixth and each subsequent year, and pro rata for a part of a year, and, in addition thereto, five days for each month as a meritorious time service award which may be granted in the discretion of the warden and the commissioner for exemplary conduct and meritorious achievement; provided any serious act of misconduct or insubordination or persistent refusal to conform to institution regulations occurring at any time during his confinement in said prison shall subject the prisoner, at the discretion of the warden and the commissioner, to the loss of all or any portion of the time earned. . . . When any prisoner is held under more than one conviction, the several terms of imprisonment imposed thereunder shall be construed as one continuous term for the purpose of estimating the amount of commutation which he may earn under the provisions of this section. . . ."

[13] General Statutes § 18-7a (a) provides in relevant part: "Except as provided in subsections (b) and (c) [of this section] any person sentenced to a term of imprisonment, on and after October 1, 1976, and while still serving such sentence whether such sentence is for a definite, indefinite or indeterminate term, and regardless of the institution wherein the prisoner is confined may, by good conduct and obedience to the rules which have been established for the service of his sentence, earn a commutation or diminution of his sentence in the amount of ten days for each month, and pro rata for a part of a month, of a sentence which is for not more than five years, and fifteen days for each month, and pro rata for a part of a month, for the sixth and each subsequent year of a sentence of more than five years. In

October 1, 1976, and June 30, 1981. Subsection (b) of § 18-7a[14] applies to sentences imposed in connection with crimes committed between July 1, 1981, and June 30, 1983. The subsection of § 18-7a applicable to the petitioner's pre-1994 sentence, namely, subsection (c),[15] applies to sentences imposed in connection with crimes committed between July 1, 1983, and September 30, 1994. General Statutes § 18-7a (c) provides in relevant part that "[a]ny person sentenced to a term of imprisonment for an offense committed on or after July 1, 1983, may, while held in default of bond or while serving such sentence, by good conduct and obedience to the rules . . . earn a reduction of his sentence as such sentence is served in the amount of ten days for each month served . . . up to five years, and twelve days for each month served . . . for the sixth and each subsequent year of a sentence which is more than five years. . . ." Finally, § 18-100d[16] eliminated good time credit for sentences imposed in connection with crimes committed on or after October 1, 1994; *Velez* v. *Commissioner of Correction*, supra, 250 Conn. 552; and mandated that prisoners must serve their maximum term or terms.

In *Velez* v. *Commissioner of Correction*, supra, 250 Conn. 537–38, this court had the opportunity to address,

the case of an indeterminate sentence, such credit shall apply to both the minimum and maximum term. In the case of an indefinite sentence, such credit shall apply to the maximum term only. . . ."

[14] General Statutes § 18-7a (b) provides in relevant part: "Except as provided in subsection (c) [of this section], any person sentenced to a term of imprisonment for an offense committed on or after July 1, 1981, may, while held in default of bond or while serving such sentence, by good conduct and obedience to the rules which have been established for the service of his sentence, earn a reduction of his sentence in the amount of ten days for each month and pro rata for a part of a month of a sentence up to five years, and twelve days for each month and pro rata for a part of a month for the sixth and each subsequent year of a sentence which is more than five years. . . ."

[15] See footnote 8 of this opinion for the relevant text of § 18-7a (c).

[16] See footnote 2 of this opinion.

for the first time, the relationship between General Statutes §§ 18-7, 18-7a (c), 18-98a, 18-98b and 18-98d (b), on the one hand, and § 18-100d, on the other. Sitting en banc, we unanimously held that § 18-100d renders the statutes affording presentence and statutory good time credit to prisoners, namely, §§ 18-7, 18-7a (c), 18-98a, 18-98b and 18-98d (b), inapplicable to prisoners sentenced to a term of imprisonment for crimes committed on or after October 1, 1994. *Velez* v. *Commissioner of Correction*, supra, 552.

In *Velez*, the petitioner, Jorge Velez, was convicted in connection with a robbery that occurred on November 30, 1994. Id., 538–39. In his petition for a writ of habeas corpus, Velez claimed that the good time credit statutes continued to apply to sentences imposed in connection with crimes committed on or after October 1, 1994. See id., 539. The habeas court in *Velez* dismissed his petition, finding that statutes affording prisoners good time credit were not applicable to sentences for crimes committed on or after October 1, 1994. See id.

On appeal, we concluded that, "[i]n enacting [Public Acts 1993, No. 93-219 (P.A. 93-219)], the legislature effected three relevant changes to the statutory scheme governing the release of prisoners. First, § 6 of P.A. 93-219 [which is now codified at General Statutes § 54-124c] transferred from the department [of correction (department)] to an independent board of parole [(board)] the supervision of all persons released from the custody of the department, other than those granted community placement pursuant to [General Statutes] § 18-100c. . . .

"Second, §§ 1 and 2 of P.A. 93-219 amended [General Statutes] §§ 18-100c and 54-125a, respectively, to increase, from one to two years, the sentence one could receive, and still be eligible for placement in a community correctional program. As amended, § 18-100c pro-

vides for community placement of prisoners sentenced to a term of imprisonment of two years or less, and § 54-125a provides for parole of prisoners sentenced to a term of imprisonment exceeding two years.

"Third, § 10 of P.A. 93-219 created a new statute codified [at General Statutes] § 18-100d [which] . . . provides: *'Notwithstanding any other provision of the general statutes,* any person convicted of a crime committed on or after October 1, 1994, shall be subject to supervision by personnel of the [d]epartment . . . or the [b]oard . . . *until the expiration of the maximum term or terms for which he was sentenced.'* . . . By its terms, § 18-100d requires that a person convicted of a crime committed on or after October 1, 1994, remain under the authority of either the department or the board for the entire length of his or her court-imposed sentence. Thus, the language of § 18-100d manifests an intention that such persons be either incarcerated (i.e., under the authority of the department), placed in a community correctional program (i.e., under the authority of the department) or on parole (i.e., under the authority of the board) during the *entire term* of their court-imposed sentences.

"Moreover, the phrase *'[n]otwithstanding any other provision of the general statutes'* . . . in § 18-100d unequivocally indicates that the legislature intended that the statutory requirement that persons convicted of crimes committed on or after October 1, 1994, remain under the authority of the department or the board for the entire length of the court-imposed sentences, would override any statutory provisions to the contrary. By its terms, therefore, § 18-100d indicates that the legislature intended that the good time statutes—statutes that operate to release inmates and persons granted community placement from the authority of the department and to release parolees from the authority of the board after completion of only a portion of their court-

imposed sentences—no longer be applicable to persons convicted of crimes committed on or after October 1, 1994." (Citation omitted; emphasis in original.) *Velez* v. *Commissioner of Correction*, supra, 250 Conn. 542–44.

In *Rivera* v. *Commissioner of Correction*, supra, 254 Conn. 214, a decision relied on by both the petitioner and the habeas court, we determined that "a prisoner who is serving multiple concurrent and consecutive sentences is entitled to have his total number of earned good time credits applied to reduce his total effective term of imprisonment." Id., 217. The petitioner, Carlos M. Rivera, was sentenced to three years imprisonment upon his conviction of a certain crime. Id., 218. While on supervised home release, Rivera was arrested on other charges. Id. As a result, Rivera's home release status was revoked and he continued to serve his three year sentence. Id. Soon thereafter, Rivera was convicted of the other charges and was sentenced to two eight year terms of imprisonment, which were to run concurrently with each other and with the original three year sentence, for a total effective sentence of eight years imprisonment. See id. Subsequently, Rivera received an additional sentence of one year imprisonment in connection with the commission of yet another crime. Id., 219. The court ordered Rivera's one year sentence to run consecutively to the existing effective sentence of eight years imprisonment, establishing a new total effective sentence of nine years imprisonment. See id. Rivera claimed, and we agreed, that certain good time credit that he had earned while serving his three year sentence should have been credited to his overall effective sentence of nine years. See id., 219–20, 255. We relied in part on that portion of § 18-7 that provides that "[w]hen any prisoner is held under more than one conviction, the several terms of imprisonment imposed thereunder shall be construed as one continuous term for the purpose of estimating the amount of commuta-

tion which he may earn . . . ." General Statutes § 18-7; see *Rivera* v. *Commissioner of Correction,* supra, 237–38.

Against the foregoing statutory and common-law backdrop, we now review the commissioner's claims that the habeas court improperly concluded that the commissioner's calculation of the petitioner's release date was flawed and that any reliance by the habeas court on our decision in *Rivera* was misplaced.

The habeas court determined that the commissioner's calculation of the petitioner's release date was flawed because the "more straightforward approach in the petitioner's situation [was] to merge the concurrent sentences without reference to estimated good time." The habeas court then concluded: "The result would be that the [petitioner's pre-1994] sentence is controlling because its release date of March 20, 2002, [occurs later] than the January 15, 2002 release date [of the petitioner's post-1994] sentence. If [the] petitioner is thereafter rewarded for good behavior by earning good time, then he is entitled to it. If such good time advances his release date to a point earlier than January 15, 2002, then such a result is the product of the concurrent sentencing approach that a trial court need not utilize. See *Rivera* v. *Commissioner of Correction,* supra, 254 Conn. 249 (court may easily avoid any untenable results by imposing consecutive terms of imprisonment rather than concurrent terms)." (Internal quotation marks omitted.) We disagree with the habeas court.

*Rivera* involved multiple sentences for crimes that all were committed prior to October 1, 1994. In fact, in a footnote appended to the first sentence of our opinion in *Rivera,* we expressly referenced our holding in *Velez* v. *Commissioner of Correction,* supra, 250 Conn. 552, that § 18-100d eliminated good time credit for prisoners serving sentences for crimes committed on or after

October 1, 1994. *Rivera* v. *Commissioner of Correction,* supra, 254 Conn. 217 n.2. We further distinguished *Rivera* from *Velez* by noting that our determination of the issues raised in *Rivera* "affect[ed] numerous persons who . . . were sentenced for crimes committed before October 1, 1994." Id.

The habeas court did not adequately consider this court's decision in *Velez* and the plain language of § 18-100d when it concluded that the commissioner improperly calculated the petitioner's release date. In enacting § 18-100d, the legislature required that a person, such as the petitioner, who has been sentenced to a term of imprisonment for a crime committed on or after October 1, 1994, serve the entire length of his court imposed sentence. See General Statutes § 18-100d; *Velez* v. *Commissioner of Correction,* supra, 250 Conn. 544–45. Under the habeas court's proposed method of calculating the petitioner's release date, however, the petitioner would not have had to serve the entire length of his post-1994 sentence, a result that the legislature sought to preclude when it enacted § 18-100d. We therefore disagree with the habeas court's application of *Rivera*[17] to the facts of this case. We further decline the petitioner's invitation to overrule *Velez*.[18]

The application of *Rivera* to the facts of this case would lead to untenable results. It is well settled that

[17] We note that, although *Rivera* is inapplicable to the facts of the present case, *Rivera* remains applicable to sentences imposed in connection with crimes committed prior to October 1, 1994. The present case involves, inter alia, a sentence for a crime committed on or after October 1, 1994, and, thus, to apply *Rivera* in such circumstances would thwart the purpose of § 18-100d, which, of course, was not applicable in *Rivera*. See *Rivera* v. *Commissioner of Correction,* supra, 254 Conn. 217 n.2.

[18] We similarly decline the petitioner's invitation to dismiss the commissioner's appeal based on an alleged "calculated and continu[ous] pattern of contemptuous conduct in defiance of the authority of the courts of this state . . . ." *Kendall* v. *Pilkington,* 253 Conn. 264, 276, 750 A.2d 1090 (2000). We find no evidence in the record of any conduct by the commissioner that would warrant dismissal of the present appeal.

we will not interpret statutes to lead to bizarre results. E.g., *Commission on Human Rights & Opportunities* v. *Sullivan Associates*, 250 Conn. 763, 778, 739 A.2d 238 (1999). A corollary to the petitioner's suggested construction of the statutory scheme is that a person who is sentenced for a crime committed on or after October 1, 1994, may serve more time than a person who receives the same sentence for the same crime, but who also receives another, longer, concurrent sentence for a crime committed prior to October 1, 1994, the term of which is reduced by the application of good time credit. We do not believe that the legislature intended this result when it sought to ensure that prisoners sentenced for crimes committed on or after October 1, 1994, would serve their maximum term. See General Statutes § 18-100d; *Velez* v. *Commissioner of Correction*, supra, 250 Conn. 544–45. Accordingly, we conclude that the habeas court's proposed method of calculating the petitioner's release date is untenable.

In addition to relying on *Rivera*, the habeas court concluded that the commissioner had engaged in posting, a practice that had been abolished by the legislature in 1982. *Seno* v. *Commissioner of Correction*, supra, 219 Conn. 280; see General Statutes § 18-7a (c). As we stated previously in this opinion, posting is a practice whereby department of correction personnel estimate and credit statutory good time at the outset of a prisoner's sentence on the basis of the term imposed by the sentencing court as opposed to the term of imprisonment actually served. See footnote 10 of this opinion and accompanying text. See generally *Seno* v. *Commissioner of Correction*, supra, 275–76. Thus, for example, if a prisoner receives a three year sentence and is eligible to earn ten days of good time credit per month over the term of that sentence, he would be credited with 360 days of good time at the outset of his sentence. The legislature abolished this practice to serve the dual

purposes of: (1) reinstating the concept of good time as a reward for good behavior; and (2) eliminating an illogical consequence of the posting system, namely, that a prisoner can receive good time credit for time never served. Id., 277–78.

The commissioner did not engage in posting in the present case. At the hearing on the petitioner's amended habeas petition, Steele testified that the process of estimating a prisoner's release date is an ongoing task during the prisoner's term of incarceration because a prisoner can earn or lose good time credit as he serves his sentence. Steele also indicated that, when a prisoner is serving concurrent sentences, the status of a sentence as the controlling sentence, i.e., the sentence with the longest term to run, can change while the prisoner is serving the concurrent sentences. She pointed to the present case as an example.

The process of estimating release dates at the outset in order to select a controlling sentence does not constitute posting, especially in light of the fact that the status of a sentence as a controlling sentence can change while the prisoner is serving his concurrent sentences. The petitioner's time sheets, which were received as exhibits at the petitioner's hearing, make clear that the petitioner was not credited with any unearned good time at the outset of his pre-1994 sentence but, rather, was earning twelve days of good time credit per month.[19] After serving six months of his pre-1994 sentence, the petitioner had earned seventy-two days of good time credit in connection with that sentence. At that point, his post-1994 sentence became the sentence with the longer term to run and properly was deemed the controlling sentence for the purpose of determining the petitioner's release date. If the petitioner had for-

---

[19] The petitioner was earning twelve days of good time credit per month pursuant to § 18-7a (c).

feited his seventy-two days of good time credit and had earned no more good time credit in connection with his pre-1994 sentence, the pre-1994 sentence could have become the controlling sentence.

Furthermore, the practice of estimating good time to determine which of two or more concurrent sentences is more likely to have the longer term to run neither compromises the concept of good time as a reward for good behavior nor allows a prisoner to receive good time credit for time that he never serves. See id., 277–78. Inasmuch as the practice of estimating good time for this purpose neither constitutes a form of posting nor implicates any of the concerns that led the legislature to eliminate posting in 1982; see Public Acts 1982, No. 82-379, § 1; we agree with the commissioner that the habeas court improperly concluded that the commissioner's calculation of the petitioner's release date resulted in posting in violation of § 18-7a (c).

Having determined that *Rivera* is inapplicable to our analysis and that the commissioner did not engage in the practice of posting, we turn to the issue of how best to harmonize the mandates of §§ 18-100d, 53a-38 (b) (1) and 18-7a (c).

Section 18-100d requires that the petitioner serve his entire three year, ten month post-1994 sentence less any presentence confinement credit earned pursuant to § 18-98d (a). Pursuant to § 18-7a (c), the commissioner may apply good time credit against the petitioner's pre-1994 sentence on a monthly basis by virtue of the petitioner's good conduct and obedience of institutional rules.[20] Section 53a-38 (b) (1) requires the com-

---

[20] In *Nichols* v. *Warren*, 209 Conn. 191, 194, 550 A.2d 309 (1988), the petitioner, Ken Nichols, sought a writ of habeas corpus, claiming that, as of the date of his habeas hearing, the respondent improperly had deducted more good time credit than Nichols had earned while serving his sentence. We concluded that "[t]he language and structure of . . . § 18-7a (c) is not peculiar and, thus, the terms must be interpreted according to their ordinary meaning. The statute provides that the inmate will receive a sentence reduc-

missioner to merge the terms of the petitioner's concurrent sentences and provides that the petitioner's sentences will be satisfied upon completion of the sentence with the longest term to run.[21]

We can harmonize the foregoing statutory provisions by recognizing that the status of a sentence as a controlling sentence can change while a prisoner is serving multiple, concurrent sentences where some but not all of those sentences are subject to reduction through the application of good time credit. Our construction of the statutory scheme is consistent with the requirement of § 18-7a (c) that good time be calculated on a monthly basis rather than at the beginning of a sentence. Our construction also is consistent with the provisions of § 18-100d, which require a prisoner to serve the full term of a sentence imposed in connection with a crime committed on or after October 1, 1994. Under our construction of the statutory scheme, the petitioner obtains the benefit of good time credit under § 18-7a (c) with respect to his pre-1994 sentence, as was the intent of the legislature for crimes committed before October 1, 1994, and the legislative mandate that the petitioner serve the full term of his post-1994 sentence is satisfied.

---

tion 'as such sentence is served.' . . . Accordingly, the good time credits are calculated into the sentence as a sentence reduction when the inmate earns the credit for good behavior from month to month." Id., 196–97.

[21] Section 53a-38 (b) (1) only specifies that, when a prisoner is serving multiple, concurrent sentences, those sentences are completed when the prisoner serves the sentence with the longest term to run. The statute does not specify when the determination of which sentence has the longest term to run should be made. When a prisoner is serving multiple, concurrent sentences, all of which are imposed for crimes committed before October 1, 1994, the controlling sentence will be the same on the date of sentencing and on the date of release—absent sentence modification or the reversal of a conviction—because the sentences are subject to the same or similar good time reductions. Similarly, if a prisoner is serving two or more concurrent sentences imposed in connection with crimes committed on or after October 1, 1994, the controlling sentence will be the same on the date of sentencing and the date of release. This is not the case here, however, where good time credit may be applied to one sentence but not another.

We conclude, therefore, that the determination of which sentence is controlling is not a static concept.[22] Consequently, we disagree with the habeas court's conclusion that the commissioner[23] improperly calculated the petitioner's release date.[24]

The judgment is reversed in part and the case is remanded with direction to render judgment denying count one of the petitioner's amended petition for a writ of habeas corpus. The judgment is affirmed in all other respects.

In this opinion the other justices concurred.

---

[22] The ongoing determination of whether a particular sentence is the controlling sentence when good time credit may apply to one or more but not all of a prisoner's concurrent sentences is not a novel concept or a practice that is carried out exclusively in this context. For example, if a prisoner is serving two concurrent sentences and the term of the sentence with the longest term to run is reduced as a result of a successful application for sentence review; see General Statutes § 51-195; it is possible that the other sentence will then become the controlling sentence. The same is true if a prisoner is serving multiple, concurrent sentences and a conviction for which the prisoner received the longest term of imprisonment is reversed on appeal.

[23] We note that the commissioner also raised an equal protection claim with respect to the habeas court's interpretation of § 18-100d. The petitioner countered that the commissioner lacked standing to bring this claim. We need not address the commissioner's alternative claim, or the petitioner's rebuttal, however, because we reject the habeas court's determination that the commissioner improperly calculated the petitioner's release date.

[24] The petitioner also claims on appeal that the judgment of the habeas court should be affirmed because the commissioner "retroactively appl[ied] § 18-100d to eliminate earned good time credits . . . ." The petitioner contends that this retroactive application of § 18-100d "raises 'serious constitutional questions' because it enhances a sentence for an offense committed in 1991 based on a statute which became effective in 1994." This claim is without merit. Section 18-100d is prospective in that it applies only to sentences imposed in connection with "crime[s] committed on or after October 1, 1994 . . . ." General Statutes § 18-100d. The commissioner did apply good time credit to reduce the petitioner's pre-1994 sentence. Section 18-100d, however, precluded the commissioner from applying good time credit to reduce the petitioner's post-1994 sentence. The commissioner's application of § 18-100d to the petitioner's post-1994 sentence constituted a prospective application of § 18-100d, not a retroactive application. Thus, we reject the petitioner's claim.