# EDUARDO MARTINEZ *v.* COMMISSIONER OF CORRECTION
## (AC 27798)

DiPentima, Lavine and Dupont, Js.

Argued September 21—officially released December 18, 2007

*Christopher M. Neary*, special public defender, for the appellant (petitioner).

*Madeline A. Melchionne*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, *Henri Alexandre*, assistant attorney general, and *Kathryn Ward Bare*, special deputy assistant state's attorney, for the appellee (respondent).

*Opinion*

DUPONT, J. The petitioner, Eduardo Martinez, appeals from the habeas court's judgment denying his petition for a writ of habeas corpus. The habeas court thereafter granted the petition for certification to appeal to this court. See Practice Book § 80-1.[1] The petitioner's

---

[1] Practice Book § 80-1 provides in relevant part: "In any habeas corpus proceeding where the party desiring to appeal is required by statute to petition the trial court for certification that a question is involved in the decision which ought to be reviewed by the appellate court, the petition for such certification shall be made to the judge who tried the case or, if such judge is unavailable, a judge of the superior court designated by the chief court administrator, within ten days after the case is decided. . . ."

primary claim is that the concurrent sentences imposed after his nine pleas of guilty, pursuant to a plea bargain, violated his federal constitutional rights because the state did not honor his reasonable expectation of (1) receiving the same amount of credit for presentence confinement for every one of the crimes committed on various dates so that the served sentence for each crime would expire simultaneously and (2) receiving good time credit as an inmate for all of the crimes, regardless of when committed. His petition also alleged that he was denied equal protection of the law after his commitment because he was treated differently from other prisoners when he was given a classification by the respondent, the commissioner of correction, that denied him the ability to earn good time credit. We affirm the judgment of the habeas court.

The following factual and procedural history is relevant to the petitioner's appeal. The petitioner was arrested on November 22, 1994, for robbery in the first degree, stemming from an incident that occurred on October 13, 1994. While the case was pending and he was being held, the petitioner was arrested, arraigned and held in lieu of bond on eight additional charges allegedly committed on various dates, almost all of which involved robbery in the first degree. Five of the nine crimes were committed after October 1, 1994, and four of them were committed prior to October 1, 1994. On January 2, 1996, the petitioner pleaded guilty, pursuant to a plea bargain, to all of the crimes with which he was charged.

On February 16, 1996, the court sentenced the petitioner for all of the nine crimes to a total effective term of twenty-five years imprisonment on each charge, to run concurrently, execution suspended after sixteen years, with five years of probation. The petitioner also received a sentence of one year, for another crime, to be served consecutively to the sentences for the nine

crimes. Due to his contemptuous behavior in court at the time of sentencing, the petitioner additionally was found guilty of two counts of contempt, and the court imposed an additional six months on each of the other sentences to be served consecutively to his one year sentence.[2]

I

Before discussing the issues raised by the petitioner in his petition, we briefly address two other claims he has raised. He claims that the court made factual errors in its memorandum of decision and should not have allowed the trial prosecutor to testify. He first argues that the alleged factual errors require a reversal of the denial of his petition, a new habeas trial because the court's findings deprived him of his federal constitutional rights and a finding of ineffective assistance of counsel.[3] The petitioner's brief does not specify which particular constitutional rights were violated.

The first factual error of which the petitioner complains is that the court stated that attorney Matthew Collins represented the petitioner at the time of the plea when, in fact, attorney William Collins, Matthew Collins' father, did so. The second error claimed is the court's finding that William Collins testified at the habeas proceeding when, in fact, it was Matthew Collins. The third claimed error is the court's statement in its memorandum of decision that the prosecutor testified that the petitioner was not concerned with good time credits.

The petitioner's counsel at the habeas hearing named both of the petitioner's trial counsel and noted that the

---

[2] The petitioner's claims do not involve the consecutive one year sentence or the consecutive sentences for contempt.

[3] The petitioner does not specify the way in which either his habeas court counsel or his counsel at the time of his plea or his sentencing were ineffective, and we, therefore, do not consider this claim.

petition originally alleged that attorney Matthew Collins represented the petitioner at the time of the plea.[4] The court's decision did not depend, however, on a finding of which of the father-son legal team was present at the time the petitioner entered his plea or a finding about whether the prosecutor believed that the petitioner was or was not concerned with good time credit. Because the claimed factual errors were not the bases of the court's decision, they afford no reason to disturb that decision. Furthermore, the petitioner did not file a motion for rectification of any claimed factual errors of the court in accordance with Practice Book § 66-5. His failure to do so undermines his ability to obtain a reversal of the court's decision due to those alleged errors. See *DiBella* v. *Widlitz*, 207 Conn. 194, 203–204, 541 A.2d 91 (1988).

In addition to his assertion of claimed factual errors of the court, the petitioner asserts that the prosecutor who negotiated his plea agreement should not have been allowed to testify at the habeas proceeding because the state, as well as the commissioner of correction, is a respondent. The state, therefore, should not have been allowed to rebut the petitioner's allegations of his petition because it had not filed a separate return. The petitioner argues that without a response from the state, it should have been defaulted and a judgment rendered for the petitioner. The petitioner also claims that the respondent's return stated that the "petitioner is left to his proof" as to his claim that good time and presentence credits were part of his plea, a response, according to him, which is not a denial.

In a habeas petition involving an inmate in the state's prisons, there is only one respondent, the commissioner of correction, who may be represented by the attorney general of the state or the chief state's attorney or both.

---

[4] It is not disputed that attorney William Collins represented the petitioner at the time of the guilty pleas and that attorney Matthew Collins testified at the habeas proceeding for the respondent.

General Statutes §§ 3-125 and 51-277 (c);[5] see *Tyson* v. *Commissioner of Correction*, 261 Conn. 806, 807, 808 A.2d 653 (2002), cert. denied sub nom. *Tyson* v. *Armstrong*, 538 U.S. 1005, 123 S. Ct. 1914, 155 L. Ed. 2d 836 (2003); *Blumenthal* v. *Barnes*, 261 Conn. 434, 449, 804 A.2d 152 (2002).

The petitioner believes that there are two respondents, the state and the commissioner of correction, and, therefore, that two responses or returns to the petition were required. Because the state is not the respondent in a habeas petition addressed to the commissioner of correction, the response of the attorney general, appearing for the commissioner, is the only response required. In this case, the return of the commissioner stating that, as to some of the allegations of the petitioner, "the petitioner is left to his proof" suffices as a denial of those allegations. See *Postemski* v. *Watrous*, 151 Conn. 183, 185, 195 A.2d 425 (1963). The petition is in the nature of a pleading, and the return is in the nature of an answer. *Carpenter* v. *Commissioner* of Correction, 274 Conn. 834, 842 n.7, 878 A.2d 1088 (2005). A petition generally conforms to a complaint in a civil action. *Young* v. *Commissioner of Correction*, 104 Conn. App. 188, 194, 932 A.2d 467 (2007). The court found, and we agree, that the respondent fully complied with Practice Book § 23-30, which governs the return in habeas corpus cases.

We next consider whether the prosecutor should have been allowed to testify at the habeas hearing. We note that the prosecutor was listed as a witness prior to the inception of the habeas trial. After the petitioner presented his evidence, the respondent was entitled to present evidence regarding the alleged contents of the

---

[5] General Statutes § 3-125 provides in relevant part: "The Attorney General shall have general supervision over all matters in which the state is an interested party . . . . He shall appear for . . . all . . . commissioners . . . in all suits and other civil proceedings . . . ."

General Statutes § 51-277 (c) provides: "The division [of Criminal Justice], through the Chief State's Attorney, shall participate on behalf of the state in all appellate, post-trial and postconviction proceedings arising out of the initiation of any criminal action whether or not the proceedings are denominated civil or criminal for other purposes."

plea agreement, including the prosecutor's knowledge of it, in order to attempt to rebut the allegations of the petition and the testimony of the petitioner. We conclude that the prosecutor was properly allowed to testify.

## II

We next consider the primary issue raised by the petitioner in his petition for a writ of habeas corpus. The amended petition alleged that the petitioner reasonably understood that the sentences he received in exchange for entering pleas of guilty on nine dockets were to run concurrently and were to be discharged at the same time. He also alleged that he understood that he would be credited with presentence time and good time credit on all of the dockets. The respondent, in her return to the amended petition, denied or left the petitioner to his proof as to his claim of a violation of the plea agreement. The respondent, by way of defense, alleged that General Statutes § 18-100d[6] prevents any person convicted of a crime committed on or after October 1, 1994, from receiving statutory good conduct credit and, therefore, that five of the crimes to which the petitioner pleaded guilty were not eligible for such credit.

The petitioner argues that he was denied his right to due process because his reasonable expectation, pursuant to his plea bargain, was not fulfilled. He argues that presentence and good time credit for all his crimes should be the same, whether the crimes were committed before or after October 1, 1994. The court, in assessing the question of whether the petitioner's plea agreement was violated, determined that the testimony

[6] General Statutes § 18-100d provides: "Notwithstanding any other provision of the general statutes, any person convicted of a crime committed on or after October 1, 1994, shall be subject to supervision by personnel of the Department of Correction until the expiration of the maximum term or terms for which such person was sentenced."

of the prosecuting attorney was more credible than the petitioner's testimony. The court concluded that the petitioner's claims that he would be discharged from confinement on the same day for all of the crimes was not credible and also concluded that the plea agreement did not encompass either presentence or good time credits while incarcerated after sentencing.

A plea agreement is much like a contract, and its validity depends on contractual principles that must be evaluated with reference to the requirements of due process. See *State* v. *Rivers*, 283 Conn. 713, 724, 931 A.2d 185 (2007); see also *State* v. *Stevens*, 278 Conn. 1, 7–8, 895 A.2d 771 (2006). An appellate or habeas court looks to what the parties reasonably understood the terms of the agreement to mean. See *State* v. *Rivers*, supra, 726.

In this case, the court found that the state had not made any promise that presentence confinement for all the crimes to which the petitioner had pleaded guilty would receive the same amount of credit or that his incarceration as to each would expire simultaneously. The court specifically noted that the docket sheets of the crimes had different dates and that the state had not made any promise that credits for the sentences imposed after conviction would all be "discharged at the same time as each other." Specifically, the court determined that there was no evidence of any promise by the state encompassing either presentence confinement credit or good time credit after sentencing. The court particularly relied on the testimony of the petitioner himself, stating that his "testimony might have some credibility if the dates on which he came into the respondent's custody were identical in all dockets that carry a sixteen year sentence." The court also noted that only four of his crimes were "good time eligible."

Transcripts of the plea and sentencing hearings were available to the habeas court and this court. There is

no mention in either transcript of credits for presentence time or for future good time credits that the petitioner might earn after beginning to serve the agreed on sentences. A transcript of the petitioner's testimony at the habeas proceeding was available also to this court. He testified that he had no understanding of how presentence or good time credits worked, although he had heard of good time. He was not aware that the state had abolished good time credit for certain crimes. His understanding was that he would get 450 days of credit for his presentence time and that he would be released three or four years earlier than the sixteen years to which he was sentenced. This testimony, even if believed, does not establish that he was promised good time credit.[7]

The transcript of the plea canvass, as a reflection of a plea agreement, was devoid of anything relating to good time credit, leaving the parties' intent to be determined as a question of fact. See *Cantonbury Heights Condominium Assn., Inc.* v. *Local Land Development, LLC*, 273 Conn. 724, 738, 873 A.2d 898 (2005). The court's finding, on the basis of the testimony of the prosecutor and the petitioner, was that the plea agreement did not encompass anything about good time credit. Our standard for review of that factual finding is the familiar clearly erroneous standard. See *Herring* v. *Commissioner of Correction*, 103 Conn. App. 431,

---

[7] A presentence credit is statutory and, as a general rule, is not constitutionally required. *Hammond* v. *Commissioner of Correction*, 259 Conn. 855, 792 A.2d 774 (2002). Before the passage of General Statutes § 100d, such a credit existed as a legislative lagniappe and is not a fundamental right. Credit for presentence incarceration time is not a right recognized as fundamental. *Hammond* v. *Commissioner of Correction*, supra, 881. Nor does it become a fundamental right when it is challenged by way of a writ of habeas corpus. Id., 883. A plea of guilty encompasses a waiver of three basic constitutional rights: jury trial, confrontation and self incrimination; *Mainiero* v. *Liburdi*, 214 Conn. 717, 725, 573 A.2d 1207 (1990); and does not involve knowledge of every consequence of such a plea.

435, 930 A.2d 41 (2007). The fact found was based on the credibility of the witnesses, and we, as an appellate court, will not afford it review. See *Sanders* v. *Commissioner of Correction*, 83 Conn. App. 543, 550, 851 A.2d 313 (2004), cert. denied, 271 Conn. 914, 859 A.2d 569 (2004). We agree with the court that there was no violation of the plea agreement.

The court determined that five of the crimes to which the petitioner pleaded were not crimes for which he was entitled to any good time credit. See General Statutes § 18-100d. Section 18-100d renders both presentence credit and statutory good time inapplicable to persons sentenced to terms of imprisonment for crimes committed on or after October 1, 1994. *Velez* v. *Commissioner of Correction*, 250 Conn. 536, 552, 738 A.2d 604 (1999). Five of the crimes were committed by the petitioner on or after October 1, 1994, and he was not entitled to either type of credit as to them. Because the court concluded that the plea agreement was not violated and that the petitioner was not induced to plead guilty by any promise of the state that all of his crimes would require a discharge on the same date, it did not discuss the appropriate amount of good time credit to which the petitioner was entitled for the four crimes committed before October 1, 1994. In view of the court's conclusion, with which we agree, we need not discuss it either.[8]

---

[8] We make certain observations, however. The respondent did not discuss the issue except briefly in a footnote. The petitioner claimed in his brief that cases such as *Tyson* v. *Commissioner of Correction*, supra, 261 Conn. 806, and *Velez* v. *Commissioner of Correction*, supra, 250 Conn. 536. We note that when there is simultaneous presentence confinement under different docket numbers for different crimes all committed before October 1, 1994, the maximum good time credit is limited to the longest confinement period, with any pretrial good time credit to be used only once. *Saintval* v. *Commissioner of Correction*, 94 Conn. App. 283, 287, 893 A.2d 451, cert. denied, 278 Conn. 916, 899 A.2d 621 (2006); *King* v. *Commissioner of Correction*, 80 Conn. App. 580, 587, 836 A.2d 466 (2003), cert. denied, 267 Conn. 919, 841 A.2d 1191 (2004). The maximum amount of presentence credit is limited when a prisoner is confined under more than one information and subse-

## III

The petitioner also argues that he was denied equal protection of the law because he was denied the opportunity to enroll in programs that would allow him to earn good time credits that would reduce the length of his incarceration after sentencing. Specifically, the petitioner asserts that his transfer to an out-of-state facility due to his classification as a security risk group safety threat member (safety threat) and his administrative segregation classification foreclosed the possibility of his being imprisoned in a facility other than Northern Correctional Institution upon his return from out-of-state imprisonment and denied him the opportunity to enroll in programs that potentially would enable him to be reclassified. We disagree.

The petitioner was classified as a safety threat, a prisoner "identified as posing a threat to the facility, staff, or inmates, from 1999-2003."[9] Prisoners classified as such are segregated in the Northern Correctional

quently receives concurrent sentences as to both or all of the informations. See *Harris* v. *Commissioner of Correction,* 271 Conn. 808, 860 A.2d 715 (2004); *Whitaker* v. *Commissioner of Correction,* 90 Conn. App. 460, 878 A.2d 321, cert. denied, 276 Conn. 918, 888 A.2d 89 (2005). The prisoner is not entitled to presentence confinement credit for each of the separate dockets on which he was held for crimes committed prior to October 1, 1994. Id.

[9] The court described the petitioner as "not exactly . . . a model prisoner." He testified that he was originally at Garner Correctional Institution in Newtown until he got into a fight and was sent to Northern Correctional Institution on administrative segregation. His status at the time of the habeas hearing was safety threat. The respondent's return to the petitioner's amended petition stated that prior to his transfer to Virginia for temporary incarceration, he had accumulated approximately fifty-five disciplinary reports, that he had received "approximately [twenty] disciplinary reports while in Virginia," and that since his return to Connecticut, he had "accumulated approximately [thirty-three] disciplinary reports." The court found that his disciplinary offenses included flagrant disobedience, fighting, causing disruption, threats, destruction of property, possession of contraband, assault, disobeying a direct order and interference with safety and security. These offenses left the petitioner with a good time deficit.

Institution at Somers. The administrative segregation program is a three phase program and is designed so that an inmate can progress through the three phases within one year. In the fall of 1999, the respondent moved 100 administrative segregation phase one inmates to Virginia, including the petitioner, on the basis of their classification. No other classification of prisoners was involved in the move. Given the safety, security and administrative needs of prisons, the purpose of the transfer of administrative segregation phase one inmates was to assist them in adjusting to a general population environment. The petitioner had spent eighteen months in administrative segregation prior to his transfer.

The court found that although the petitioner alleged in his amended petition that the respondent's disciplinary policy violated his equal protection rights, he failed to prove the allegation, and it was deemed abandoned. Even if the petitioner had presented evidence to support his equal protection claim, it would have failed because a "statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." (Internal quotation marks omitted.) *Harris* v. *Commissioner of Correction,* 271 Conn. 808, 834, 860 A.2d 715 (2004). Inmates do not have a constitutionally protected right to a particular classification. *Torres* v. *Stewart,* 263 F. Sup. 2d 463, 469 (D. Conn. 2003). Prisoners classified in a certain category are not a suspect class, and therefore no fundamental right is implicated. See *Harris* v. *Commissioner of Correction,* supra, 833. Furthermore, all of the prisoners transferred to Virginia were classified as segregation phase one inmates, and it is difficult to understand how the classification denied the petitioner equal protection of the law.

The due process clause itself does not create a liberty interest for a prisoner, although a statutory provision could create an interest in a shortened prison sentence. *Sandin* v. *Conner*, 515 U.S. 472, 115 S. Ct. 2293, 132 L. Ed. 2d 418 (1995). "Discipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of a sentence imposed by a court of law." Id., 485. In order to state a claim of a violation of due process, an inmate must show a protected liberty interest and a deprivation of that interest without being afforded due process of law. A prisoner's liberty interest to be free from disciplinary segregation is not inherent in the due process clause of the federal constitution. *Harris* v. *Meulemans*, 389 F. Sup. 2d 438, 441 (D. Conn. 2005). "Under Connecticut law, the Commissioner of Correction retains discretionary authority to classify prisoners at any security level." Id.; see General Statutes § 18-81 (discussing respondent's duties). The respondent, pursuant to General Statutes § 18-7a, has discretion to award or not award the credit allowed in that statute, but there is no statutory right to good time credit. *Harris* v. *Meulemans*, supra, 442. A prisoner has no constitutionally protected interest in or to a particular classification. Id. In this case, the petitioner has not shown any deprivation of a constitutional right.

The judgment is affirmed.

In this opinion the other judges concurred.