# RANDY HARRIS *v.* COMMISSIONER OF CORRECTION
## (SC 17078)

Borden, Norcott, Palmer, Vertefeuille and Zarella, Js.

Argued April 20—officially released November 30, 2004

*Ann E. Lynch*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *Jo Anne Sulik*, assistant state's attorney, for the appellant (respondent).

*Sandra J. Crowell*, assistant public defender, with whom were *Temmy Ann Pieszak*, chief of habeas corpus services, and, on the brief, *Judith M. Wildfeuer*, assistant public defender, for the appellee (petitioner).

*Opinion*

ZARELLA, J. The principal issue presented by this appeal is whether the petitioner, Randy Harris, was

entitled by General Statutes § 18-98d[1] to have each of his two concurrent sentences, which were imposed on different dates, reduced by the same calendar days of presentence confinement credit, which he had accrued simultaneously while held in lieu of bond under two separate dockets. We conclude that he was not, and, accordingly, we reverse the judgment of the habeas court.

The petitioner commenced this action by filing a pro se petition for a writ of habeas corpus.[2] The petitioner claimed that the respondent, the commissioner of correction, had denied him 751 days of presentence confinement credit that he had accrued while held in lieu of bond simultaneously under two separate dockets for which he thereafter was sentenced to two concurrent terms of imprisonment on June 16 and June 27, 2000, respectively. The petitioner argued that the respondent should have followed the procedure described in *Payton* v. *Albert*, 209 Conn. 23, 32, 547 A.2d 1 (1988) (en

[1] General Statutes § 18-98d (a) provides in relevant part: "(1) Any person who is confined to a community correctional center or a correctional institution for an offense committed on or after July 1, 1981, under a mittimus or because such person is unable to obtain bail or is denied bail shall, if subsequently imprisoned, earn a reduction of such person's sentence equal to the number of days which such person spent in such facility from the time such person was placed in presentence confinement to the time such person began serving the term of imprisonment imposed; provided (A) each day of presentence confinement shall be counted only once for the purpose of reducing all sentences imposed after such presentence confinement; and (B) the provisions of this section shall only apply to a person for whom the existence of a mittimus, an inability to obtain bail or the denial of bail is the sole reason for such person's presentence confinement, except that if a person is serving a term of imprisonment at the same time such person is in presentence confinement on another charge and the conviction for such imprisonment is reversed on appeal, such person shall be entitled, in any sentence subsequently imposed, to a reduction based on such presentence confinement in accordance with the provisions of this section. . . ."

[2] On April 21, 2003, following the appointment of counsel, the petitioner filed an amended petition for a writ of habeas corpus. The petitioner filed a second amended petition on April 22, 2003.

banc), overruled in part on other grounds, *Rivera* v. *Commissioner of Correction*, 254 Conn. 214, 255 n.44, 756 A.2d 1264 (2000), and credited both sentences with 751 days of presentence confinement for the purpose of calculating his discharge date. The habeas court, *Fuger, J.*, rejected the respondent's argument that the 751 days of presentence confinement could be counted toward only one sentence under the plain language of § 18-98d (a) (1) (A) and granted the petition. The respondent, upon the granting of certification, appealed from the judgment of the habeas court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-2.

The record discloses the following facts and procedural history. The petitioner was placed into the custody of the respondent on October 29, 1997, when he was charged in a criminal information assigned to Docket Nos. CR97-513469 and MV97-372359[3] (Hartford I).[4] On December 15, 1997, the petitioner was charged with additional offenses set forth in two informations in Docket Nos. CR97-159252 and CR97-159254 (Manchester II). The petitioner, unable to post bond for the

[3] Because it is the general practice of the Superior Court clerk's office to assign a separate docket number for each criminal information that culminates in a sentence, the respondent relies on the docket number to trace presentence confinement periods.

[4] The petitioner pleaded guilty to one count of reckless endangerment in the first degree in violation of General Statutes § 53a-63 in the Hartford I docket and was sentenced to a term of one year imprisonment. The respondent established a May 12, 2001 release date for the Hartford I sentence by adding one year to the June 27, 2000 sentencing date and subtracting forty-five days of presentence confinement credit, which represented the period from October 31, 1997, two days after the petitioner was charged for the Hartford I offenses, to December 15, 1997, the date on which the petitioner's presentence confinement period commenced for the Manchester II offenses. Because the Hartford I sentence had been executed fully prior to October 18, 2001, when the petitioner filed his pro se petition, the presentence confinement credit applied to the Hartford I sentence is not at issue in this appeal.

Manchester II charges, was held in presentence confinement for 780 days from December 15, 1997, to February 2, 2000, when he was sentenced to a term of two years imprisonment for separate offenses not germane to this appeal[5] (Manchester I). On January 12, 1998, the petitioner was charged in a fourth information in Docket Nos. CR98-516413 and MV98-373384 (Hartford II). He was held in lieu of bond for the Hartford II offenses for 751 days from January 12, 1998, to February 2, 2000, while he was simultaneously confined in connection with the Manchester II charges.

On June 16, 2000, the petitioner was sentenced in the Manchester II dockets to a total effective sentence of four years imprisonment[6] to be served concurrently with the two year sentence imposed in Manchester I. On June 27, 2000, the petitioner was sentenced in the Hartford II dockets to a total effective sentence of four years imprisonment[7] to be served concurrently with all other sentences that he then was serving.

---

[5] On February 2, 2000, the petitioner was sentenced to six months imprisonment for each of four counts of criminal contempt of court in violation of General Statutes § 51-33a in four separate dockets (Manchester I). The court ordered each six month sentence to run consecutively, for a total effective sentence of twenty-four months. The petitioner was not held in lieu of bond for these offenses and was discharged from the Manchester I sentence on or about February 1, 2002.

[6] On the first Manchester II information, Docket No. CR97-159252, the petitioner was sentenced to four years imprisonment for one count of larceny in the third degree in violation of General Statutes § 53a-124 to run concurrently with the Manchester I sentence. On the second Manchester II information, Docket No. CR97-159254, the petitioner was sentenced to a term of one year imprisonment for one count of robbery in the third degree in violation of General Statutes § 53a-136 to run concurrently with the sentences imposed in Docket No. CR97-159252 and the Manchester I dockets. Thus, Docket No. CR97-159252 became the controlling docket for the purpose of establishing the petitioner's release date for the Manchester II sentence.

[7] In Docket No. CR 98-516413, the petitioner was sentenced to four years imprisonment for assault in the second degree in violation of General Statutes § 53a-60d (a). In Docket No. MV98-373384, he was sentenced to thirty days for reckless driving in violation of General Statutes § 14-222. Both sentences were to run concurrently with all other sentences that the petitioner then was serving.

The respondent calculated the petitioner's discharge date for the Manchester II sentence by adding four years to the June 16, 2000 sentencing date to arrive at a maximum discharge date of June 15, 2004. The respondent then posted 779 days of presentence confinement credit earned between December 15, 1997, and February 2, 2000, plus one day authorized by Public Acts 2001, No. 01-78 (P.A. 01-78),[8] which yielded a discharge date of April 27, 2002, for the Manchester II sentence.

With respect to the Hartford II sentence, the respondent calculated the June 25, 2004 discharge date by adding four years to the June 27, 2000 sentencing date and deducting one day of presentence confinement credit authorized by P.A. 01-78. The respondent did not credit the Hartford II sentence with the 751 days that had accrued between January 12, 1998, and February 2, 2000, because he believed that such credit would violate General Statutes § 18-98d (a) (1) (A), which provides that "each day of presentence confinement shall be counted only once for the purpose of reducing all sentences imposed . . . ." In accordance with that interpretation, the respondent determined that the 751 days of presentence confinement traceable to both the Manchester II and Hartford II dockets already had been counted when the respondent credited the Manchester II sentence with 780 days of presentence confinement. Consequently, there were no days remaining to accelerate the June 25, 2004 discharge date established for the Hartford II sentence. Since the Hartford II sentence was

---

[8] Public Acts 2001, No. 01-78, § (a) (2) (B) is now codified at General Statutes § 18-98d (a) (2) (B), which provides: "Any person convicted of any offense and sentenced prior to October 1, 2001, to a term of imprisonment, who was confined in a correctional facility for such offense on October 1, 2001, shall be presumed to have been confined to a police station or courthouse lockup in connection with such offense because such person was unable to obtain bail or was denied bail and shall, unless otherwise ordered by a court, earn a reduction of such person's sentence in accordance with the provisions of subdivision (1) of this subsection of one day."

ordered to run concurrently with all other sentences that the petitioner was serving, it became the controlling sentence for the purpose of establishing the petitioner's discharge date pursuant to General Statutes § 53a-38 (b).[9]

The petitioner thereafter filed this petition for a writ of habeas corpus, claiming that the respondent had erred in calculating his discharge date. Specifically, the petitioner alleged that he was entitled to receive 751 days of presentence confinement credit on his Hartford II sentence, which would have advanced the discharge date for that sentence from June 25, 2004, to June 6, 2002.[10] The petitioner further contended, inter alia, that the denial of such credit constituted discrimination on the basis of indigency in contravention of the equal protection clauses of the federal and state constitutions[11] and violated the

[9] General Statutes § 53a-38 (b) provides: "A definite sentence of imprisonment commences when the prisoner is received in the custody to which he was sentenced. Where a person is under more than one definite sentence, the sentences shall be calculated as follows: (1) *If the sentences run concurrently, the terms merge in and are satisfied by discharge of the term which has the longest term to run;* (2) if the sentences run consecutively, the terms are added to arrive at an aggregate term and are satisfied by discharge of such aggregate term." (Emphasis added.)

[10] The habeas court, in its memorandum of decision, determined that the petitioner would have been released on April 27, 2002, if the 751 days of presentence confinement had been credited to the Hartford II sentence. At the habeas proceeding, however, Michelle Deveau, a records specialist employed by the respondent, testified that the adjusted release date for the Hartford II sentence would have been June 6, 2002. The habeas court may have confused inadvertently the release date established for the Manchester II sentence, April 27, 2002, with the adjusted release date for the Hartford II sentence, had that sentence been reduced by 751 days of presentence confinement.

[11] The equal protection clause of the fourteenth amendment to the United States constitution, §1, provides in relevant part: "No State shall make or enforce any law which shall . . . deny to any person within its jurisdiction the equal protection of the laws."

Article first, § 20, of the constitution of Connecticut provides in relevant part: "No person shall be denied the equal protection of the law . . . ."

"This court has many times noted that the equal protection clauses of

prohibition against double jeopardy under the federal constitution.[12]

The habeas court agreed with the petitioner, concluding that the rationale set forth in *Payton* v. *Albert*, supra, 209 Conn. 32, should govern the calculation of the petitioner's sentences. The court stated: "The . . . method endorsed in *Payton* requires the calculation of each docket's discharge date by examining *each* docket and adjusting it for *its* authorized credits. In accordance with *Payton*, the respondent must treat each concurrent docket's presentence confinement credit separately and cannot transfer such credit to another docket. In calculating each docket's respective discharge date, however, the same time periods or calendar days can be utilized to calculate each docket's respective discharge date. Any presentence confinement credit that is unique to a docket can only be posted or applied to that docket. Conversely, any presentence confinement credit that is not unique to a docket can be . . . applied to each of the dockets where such credit was earned, with the limitation that each calendar day can only be posted or applied once. This methodology ensures both that the sentenced inmate receives proper credit on each docket's respective sentence and that each day of presentence confinement credit is only counted once *for the purpose of reducing all sentences imposed after such presentence confinement.* General Statutes § 18-98d (a) (1) (A)." (Emphasis in original.)

the state and federal constitutions have a like meaning and impose similar constitutional limitations." *Horton* v. *Meskill*, 172 Conn. 615, 639, 376 A.2d 359 (1977).

[12] The double jeopardy clause of the fifth amendment to the United States constitution provides in relevant part: "No person shall be . . . twice put in jeopardy of life or limb . . . ." This clause is made applicable to the states through the fourteenth amendment to the United States constitution. See *Benton* v. *Maryland*, 395 U.S. 784, 794, 89 S. Ct. 2056, 23 L. Ed. 2d 707 (1969).

The habeas court explained that, under the reasoning of *Payton*, this method of calculation does not result in the double counting of presentence confinement credits once the sentences are merged pursuant to § 53a-38 (b). The court determined that, by merging the terms of concurrent sentences, as required by the statute, "any overlapping days, either pre-sentence or post-sentence, are only credited once." The habeas court acknowledged that the petitioner in *Payton* had been sentenced to concurrent terms on the same date, but concluded, nevertheless, that the *Payton* rationale applies with equal force when prisoners are sentenced to concurrent terms on different dates. In reaching that result, the court stated: "[Sections] 18-98d, 53a-38 (b) and *Payton* do not distinguish between concurrent sentences imposed on the same day versus those imposed on different days. The fact that the respondent in *Payton* was able to make the adjustments for the two dockets on the same day as a result of the sentencing occurring on the same day does not mean that double counting was prevented *because* the sentencing date was the same. There is simply no valid reason to apply a different rule." (Emphasis in original.)

With respect to the petitioner's equal protection claim, the habeas court concluded that the respondent's method for applying presentence confinement credit gives rise to disparate treatment when concurrent sentences are imposed on different dates, but that such disparity is not attributable to the petitioner's indigency. Rather, the court noted that the disparity is premised on the fact that "a person sentenced [to concurrent prison terms] on the same day would receive all of the pretrial credits on each docket while the person sentenced [to concurrent terms] on different days would not." The habeas court determined that the respondent's asserted interest in its calculation method was not sufficiently compelling to justify the resulting

infringement on the petitioner's fundamental right to liberty. Finally, the habeas court concluded that the respondent's method of calculation violated the prohibition against double jeopardy because it did not afford the petitioner recognition for the time that he was compelled to remain in custody in the Hartford II dockets.

On the basis of the foregoing reasoning, the court ordered the petitioner released immediately on the condition that he would be remanded back into the custody of the respondent to serve the remainder of his sentence should the respondent prevail in this appeal.[13] Subsequently, the habeas court granted the respondent's petition for certification to appeal to the Appellate Court. This appeal followed.

On appeal, the respondent claims that the credit allocation method sanctioned by the habeas court contradicts the language of § 18-98d (a) (1) (A). The respondent also challenges the habeas court's conclusion that the refusal to allocate presentence confinement credit to the petitioner's Hartford II sentence violated the petitioner's right to equal protection under the law and his right to be free of double jeopardy.

We begin our analysis by setting forth the appropriate standard of review. "Although a habeas court's findings of fact are reviewed under a clearly erroneous standard of review, questions of law are subject to plenary review." *Tyson* v. *Commissioner of Correction*, 261 Conn. 806, 816, 808 A.2d 653 (2002), cert. denied sub nom. *Tyson* v. *Armstrong*, 538 U.S. 1005, 123 S. Ct. 1914, 155 L. Ed. 2d 836 (2003). Because the material facts are not in dispute and the issues before us present questions of law, our review is plenary. See id.

---

[13] The petitioner allegedly came back into the respondent's custody on July 21, 2003, for charges unrelated to this appeal.

## I

We turn first to the respondent's claim that the habeas court improperly construed the applicable provisions of § 18-98d. The respondent argues that the credit allocation method urged by the petitioner and accepted by the habeas court is improper because it results in duplicate counting of the 751 days of presentence confinement during which the petitioner was incarcerated simultaneously under the Manchester II and Hartford II dockets. We agree with the respondent.

The respondent's argument raises a question of statutory interpretation. "In matters requiring interpretation of statutes our review is plenary. . . . We therefore begin with an examination of the words of the statute itself, as directed by Public Acts 2003, No. 03-154, § 1 (P.A. 03-154), which provides that [t]he meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered."[14] (Citation omitted; internal quotation marks omitted.) *Goodyear* v. *Discala*, 269 Conn. 507, 512, 849 A.2d 777 (2004).

The principal statutory language at issue in this appeal is set forth in General Statutes § 18-98d (a) (1), which provides in relevant part: "Any person who is confined to a community correctional center or a cor-

---

[14] The legislature enacted P.A. 03-154, § 1, in direct response to our decision in *State* v. *Courchesne*, 262 Conn. 537, 816 A.2d 562 (2003), and we have recognized that P.A. 03-154, § 1, "has legislatively overruled that part of *Courchesne* in which we stated that we would not require a threshold showing of linguistic ambiguity as a precondition to consideration of sources of the meaning of legislative language in addition to its text." *Paul Dinto Electrical Contractors, Inc.* v. *Waterbury*, 266 Conn. 706, 716 n.10, 835 A.2d 33 (2003).

rectional institution for an offense committed on or after July 1, 1981, under a mittimus or because such person is unable to obtain bail or is denied bail shall, if subsequently imprisoned, earn a reduction of such person's sentence equal to the number of days which such person spent in such facility from the time such person was placed in presentence confinement to the time such person began serving the term of imprisonment imposed; provided (A) *each day of presentence confinement shall be counted only once for the purpose of reducing all sentences imposed after such presentence confinement*; and (B) the provisions of this section shall only apply to a person for whom the existence of a mittimus, an inability to obtain bail or the denial of bail is the sole reason for such person's presentence confinement . . . ." (Emphasis added.)

If more than one sentence is imposed on a prisoner, the respondent calculates the incarceration period and discharge date by applying the provisions of General Statutes § 53a-38 (b), which provides in relevant part: "Where a person is under more than one definite sentence, the sentences shall be calculated as follows: (1) If the sentences run concurrently, the terms merge in and are satisfied by discharge of the term which has the longest term to run . . . ." The merger concept embodied in this provision simply requires that the respondent compare the length of each sentence, after adjustment for its authorized credits, in order to ascertain which is the longest for the purpose of determining the prisoner's discharge date. See *Payton* v. *Albert*, supra, 209 Conn. 32. The merger process does not alter the fact that concurrent sentences remain "separate terms of imprisonment which the legislature has permitted to be served at one time." *State* v. *Clemons*, 168 Conn. 395, 409, 363 A.2d 33, cert. denied, 423 U.S. 855, 96 S. Ct. 104, 46 L. Ed. 2d 80 (1975).

The respondent's allocation of presentence confinement credit in the present case comports fully with the requirements set forth in §§ 18-98d (a) (1) and 53a-38 (b). The respondent first credited the Manchester II sentence with 780 days of presentence confinement, which included the 751 days during which the petitioner also was confined under the Hartford II information. Once that credit had been applied to the Manchester II sentence, the days encompassed therein had been "counted . . . once for the purpose of reducing all sentences imposed" within the meaning of § 18-98d (a) (1) (A). As a consequence, they could not be applied again to advance the June 25, 2004 discharge date for the Hartford II sentence without violating the proscription in the statute against double counting. After the respondent merged the two sentences pursuant to § 53a-38 (b) and determined that the Hartford II sentence had the longest term to run, that sentence became the controlling sentence for the purpose of fixing the petitioner's discharge date at June 25, 2004.

The petitioner urges us to affirm the judgment of the habeas court, which was based on its conclusion that the respondent was bound to use the methodology described in *Payton* v. *Albert*, supra, 209 Conn. 32, for the purpose of calculating the petitioner's discharge date. We decline to do so, however, because the habeas court extended our holding in *Payton* beyond its intended scope.

The only issue before this court in *Payton* was whether presentence confinement days unique to one sentence could be transferred to another sentence, imposed on the same date, for the purpose of accelerating the petitioner's discharge date. See id., 24–25. We decided that question within the context of the following factual scenario. The petitioner, Grover Payton, was arrested on July 22, 1986, and charged with various crimes, including robbery (Docket No. CR 6-262088).

Id., 24, 27. He remained in pretrial confinement for these offenses for 113 days, until November 12, 1986, when he posted bail. Id., 27. On August 28, 1986, Payton was charged with possession of cocaine (Docket No. CR 6-263741) and remained in pretrial confinement on that charge until he posted bail on November 12, 1986, seventy-six days later. Id. On January 16, 1987, Payton pleaded guilty to one count of robbery in the third degree and was sentenced to a term of two and one-half years imprisonment in Docket No. CR 6-262088. Id. That same day, Payton also pleaded guilty to possession of cocaine and was sentenced to a second term of two and one-half years imprisonment in Docket No. CR 6-263741, to run concurrently with the robbery sentence. Id.

"In determining [Payton's] effective release date, the respondent examined the pretrial confinement time in each case. In Docket No. CR 6-262088, the respondent calculated that 113 days of jail time plus a corresponding reduction of thirty-eight days for good conduct (good time) advanced the petitioner's release date in that case from July 15, 1989, to February 14, 1989. In Docket No. CR 6-263741, the respondent calculated that seventy-six days of jail time plus a corresponding twenty-six days of good time advanced the release date from July 15, 1989, to April 4, 1989. Having merged the two sentences and on the basis of the sentence which had the longest to run, the respondent, pursuant to § 53a-38 (b), determined that the actual release date would be April 4, 1989.

"[Payton argued] that he should [have received] jail time credit for all presentence confinement regardless of which offense caused his pretrial confinement and regardless of which sentence caused his subsequent imprisonment. In effect, he [sought] to credit the 113 days of jail time accrued in Docket No. CR 6-262088

to the sentence imposed in Docket No. CR 6-263741." Id., 27–28.

We rejected Payton's claim, concluding that neither the language nor the legislative history of § 18-98d supported his assertion that the legislature had "intended to authorize the transfer of jail time credits accrued while in pretrial confinement under one offense to the sentence thereafter imposed upon conviction for another offense." Id., 31–32. During the course of our analysis, we described the method that the respondent had used to calculate Payton's discharge date as follows: "[T]he respondent determined that the two and one-half year term imposed in Docket No. CR 6-262088, when adjusted for its authorized credits, would be satisfied on February 14, 1989. The two and one-half year term imposed in Docket No. CR 6-263741, when adjusted for its authorized credits, would be satisfied on April 4, 1989. The two sentences having been ordered to run concurrently, § 53a-38 (b) directed that their merged terms were satisfied by the 'discharge of the term which has the longest term to run.' In this instance, the respondent determined that the longer term was the sentence in Docket No. CR 6-263741, i.e., until April 4, 1989, and therefore he declared that date as the proposed discharge date since § 53a-38 (b) required him to do so. We conclude that the determination of the discharge date by this method reflects a correct construction of the two applicable statutes." Id., 32.

The *Payton* court's commentary on the respondent's method for calculating Payton's discharge date must be read in the context of the issue posed by that case, namely, whether presentence confinement days accrued solely in connection with one sentence could be transferred to another concurrent sentence imposed on the same date for the purpose of advancing the petitioner's discharge date. See id., 24–25. Certainly, it was not the court's intent in *Payton* to prescribe a

sweeping mandate obligating the respondent to apply the same procedure when concurrent sentences are imposed on different dates. Notwithstanding that conclusion, we believe that our construction of §§ 18-98d and 53a-38 (b) in the present case is not inconsistent with the respondent's application of those same statutes in *Payton*. When concurrent sentences are imposed on the same date, as in *Payton*, the available presentence confinement days have not yet been utilized. The respondent thus examines and applies the presentence time served under each docket and then establishes the discharge date by choosing the sentence which has the longest term to run. See General Statutes § 53a-38 (b) (1). Conversely, when concurrent sentences are imposed on different dates, the presentence confinement days accrued simultaneously on more than one docket are utilized fully on the date that they are applied to the first sentence. Hence, they cannot be counted a second time to accelerate the discharge date of any subsequent sentence without violating the language of § 18-98d (a) (1) (A). See *Mirault* v. *Commissioner of Correction*, 82 Conn. App. 520, 523, 844 A.2d 961 (2004) (presentence confinement days credited to reduce term of confinement under one information cannot be credited again to reduce term of confinement under another information); see also *King* v. *Commissioner of Correction*, 80 Conn. App. 580, 587, 836 A.2d 466 (2003), cert. denied, 267 Conn. 919, 841 A.2d 1191 (2004); *Johnson* v. *Commissioner of Correction*, 80 Conn. App. 574, 579–80, 836 A.2d 453 (2003), cert. denied, 267 Conn. 918, 841 A.2d 1191 (2004); *Torrice* v. *Commissioner of Correction*, 46 Conn. Sup. 77, 82, 738 A.2d 1164 (1997) (presentence confinement credit fully utilized on date first sentence is imposed), aff'd, 55 Conn. App. 1, 739 A.2d 270 (1999).

The respondent contends that his construction of § 18-98d is consistent with the intent of the legislature

in enacting that statute as noted by this court in *Delev-ieleuse* v. *Manson*, 184 Conn. 434, 440–42 n.4, 439 A.2d 1055 (1981). We agree.

The petitioner in *Delevieleuse* was held in presentence confinement for fifty-six days after he was charged with seven counts of larceny. Id., 435. He pleaded guilty to all seven counts and was sentenced to six months imprisonment on each count. Id. "The [sentencing] court ordered that the first five sentences run consecutively to one another and that the sixth and seventh sentences run concurrently with the first five. Thus, the total effective sentence was thirty months." Id. The respondent commissioner of correction applied the fifty-six days of presentence confinement to reduce the petitioner's total effective sentence. Id. The petitioner thereafter filed a petition for a writ of habeas corpus, arguing that he was entitled to receive presentence confinement credit toward each of the sentences that comprised his total effective sentence. Id., 435–36. The habeas court rejected the petition and the petitioner appealed from that judgment. Id., 436. On appeal, we reversed the judgment of the habeas court and remanded the case with direction that the petitioner receive credit for the presentence confinement days on each of his sentences. Id., 441. Our decision, however, was premised on our interpretation of General Statutes (Rev. to 1979) § 18-97, a predecessor statute of § 18-98d, which entitled a person to receive presentence confinement credit on each "sentence," and did not include the proviso now embodied in § 18-98d (a) (1) (A) that "each day of presentence confinement shall be counted only once for the purpose of reducing all sentences imposed after such presentence confinement . . . ." See *Delevieleuse* v. *Manson*, supra, 184 Conn. 435–36 n.1. We observed in *Delevieleuse* that the legislature recently had changed the statutory scheme and concluded that the legislative history of the new enact-

ment clearly "indicate[d] legislative intent both to change from a system which awarded multiple credit for jail time and not to implement that change for crimes committed before July 1, 1981." Id., 442 n.4.

Our interpretation of § 18-98d also is consistent with the California Supreme Court's interpretation of an analogous statute in *In re Joyner*, 48 Cal. 3d 487, 489, 769 P.2d 967, 256 Cal. Rptr. 785 (1989). The statute, Cal. Penal Code § 2900.5 (b), provided in relevant part: "(a) In all felony and misdemeanor convictions, either by plea or by verdict, when the defendant has been in custody, including . . . any time spent in a jail . . . prison . . . or similar residential institution, all days of custody of the defendant, including days served as a condition of probation in compliance with a court order . . . shall be credited upon his term of imprisonment . . . . (b) For the purposes of this section, credit shall be given only where the custody to be credited is attributable to proceedings related to the same conduct for which the defendant has been convicted. Credit shall be given only once for a single period of custody attributable to multiple offenses for which a consecutive sentence is imposed." (Internal quotation marks omitted.) *In re Joyner*, supra, 491.

The California Supreme Court held, under circumstances similar to those in the present case, that "a period of time previously credited against a sentence for unrelated offenses cannot be deemed 'attributable to proceedings' resulting in a later-imposed sentence unless it is demonstrated that the claimant would have been at liberty during the period were it not for a restraint relating to the proceedings resulting in the later sentence. In other words, duplicative credits against separately imposed concurrent sentences for unrelated offenses will be granted only on a showing of strict causation." Id., 489. The court thus determined that the period of presentence incarceration at issue in

that case "[had] been credited against [the] petitioner's [first sentence], making it also a period during which [the] petitioner in effect was serving a sentence on another conviction." Id., 492. Accordingly, those same days could not be credited a second time against the petitioner's subsequent sentence. Id.

The reasoning of California's highest court is consistent with § 18-98d (a) (1) (B), which provides that presentence confinement credit "shall only apply to a person for whom the existence of a mittimus, an inability to obtain bail or the denial of bail is the *sole reason* for such person's presentence confinement . . . ." (Emphasis added.) Thus, viewing § 18-98d through the lens of the California decision, once the petitioner's sentence on the first conviction had been credited with those days of presentence confinement that had been served simultaneously on the first and second dockets, they became the initial days of his sentence on the first conviction and were not, therefore, the sole reason for his confinement on the second conviction. This interpretation of the statute is supported by our conclusion in *Holmquist* v. *Manson*, 168 Conn. 389, 393–94, 362 A.2d 971 (1975), that "the purpose of the 'jail time' statutes is to give recognition to the period of presentence time served and to permit the prisoner, in effect, to commence serving his sentence from the time he was compelled to remain in custody . . . ."

The petitioner nonetheless contends that the respondent's construction of § 18-98d "effectively converts presentence confinement time on one concurrent sentence to consecutive time" and "thwarts the very purpose of .[§ 18-98d]." He argues that, under the respondent's interpretation, prisoners who receive concurrent sentences on different dates serve longer sentences than prisoners who receive concurrent sentences on the same date. We find that argument unavailing because it is premised on the assumption

that the petitioner is entitled to have both his Manchester II and Hartford II sentences adjusted by the 751 days of presentence confinement accrued simultaneously under both dockets. Under § 18-98d (a) (1) (A), however, those days may be counted only once—in this case to reduce the first sentence, Manchester II— because the statute expressly provides that each day of presentence confinement shall be counted only once for the purpose of reducing all sentences thereafter imposed. By applying the 780 days of presentence confinement credit to accelerate the discharge date for the Manchester II sentence from June 15, 2004, to April 27, 2002, the commissioner accomplished the very purpose of § 18-98d. He afforded the petitioner recognition for each day that he was held in presentence confinement, thereby allowing the petitioner, in effect, to commence serving his Manchester II sentence on December 15, 1997, the date on which he was taken into custody for the underlying offenses. See *Holmquist* v. *Manson*, supra, 168 Conn. 393–94. Because the petitioner was not entitled to receive credit toward his Hartford II sentence for the 751 days of presentence confinement accrued under the Hartford II docket, the respondent determined properly that the petitioner must serve the entire four year sentence imposed on June 27, 2000, resulting in a discharge date of June 25, 2004. This method neither converts the petitioner's presentence confinement days to consecutive time nor thwarts the underlying purpose of § 18-98d. To the contrary, it is fully consistent with the language of § 18-98d.

The petitioner directs us to *Valle* v. *Commissioner of Correction*, 45 Conn. App. 566, 567–71, 696 A.2d 1280 (1997), rev'd on other grounds, 244 Conn. 634, 711 A.2d 722 (1998), in which the Appellate Court endorsed the *Payton* methodology under facts substantially similar to those in the present case. *Valle* is not controlling, however, because we subsequently reversed the judg-

ment of the Appellate Court, thereby depriving it of any precedential value, because the petitioner, Alphonso Valle, had escaped from the respondent's custody prior to oral argument before that court. *Valle* v. *Commissioner of Correction*, 244 Conn. 634, 635–36, 711 A.2d 722 (1998).

Moreover, in *King* v. *Commissioner of Correction*, supra, 80 Conn. App. 587, a case decided after *Valle*, the Appellate Court upheld the respondent's construction of § 18-98d when presentence confinement days had accrued simultaneously on two separate dockets and had culminated in sentences imposed on different dates. The petitioner, Eric King, had been charged by information on May 18, 1995, and was held in lieu of bond for 264 days until February 6, 1996, when he was sentenced on that charge to nine months imprisonment. Id., 582. The respondent applied the 264 days of presentence confinement to advance the release date of the sentence to February 15, 1996, just nine days after it was imposed. Id. "On June 15, 1995, during the period of time in which [King] was being held in presentence confinement under the first information, he was arrested and . . . held in lieu of bond under [a second] information . . . . [Thus, King] was held in presentence confinement simultaneously under both of those informations for 236 days, between June 15, 1995, the date of [his] arrest under the second information, and February 6, 1996, the date on which [King] began serving his sentence . . . under the first information." Id.

On May 5, 2000, King was sentenced under the second information to an eighteen year term of imprisonment. Id. The respondent refused to adjust the second sentence by the 236 days of presentence confinement accrued simultaneously under the first and second informations, prompting King to file a petition for a writ of habeas corpus. Id., 583. The Appellate Court affirmed the habeas court's dismissal of King's petition

on the ground that the 236 days at issue in the appeal already had been credited to the first sentence. Id., 586–87. The Appellate Court explained: "Once a day of presentence confinement has been credited to reduce the term of sentenced confinement under one information, it cannot be credited again to reduce the term of sentenced confinement under another information." Id., 587. Although King's sentences did not run concurrently and his first sentence had been discharged prior to the imposition of the second, the core reasoning applied by the Appellate Court in *King* is consistent with the rationale that we embrace in the present case. Furthermore, the Appellate Court relied upon its holding in *King* to reach the same result in a subsequent line of cases that presented facts similar to those in *King*. See, e.g., *Mirault* v. *Commissioner of Correction*, supra, 82 Conn. App. 524–25; *Johnson* v. *Commissioner of Correction*, supra, 80 Conn. App. 580; but see *Bernstein* v. *Commissioner of Correction*, 83 Conn. App. 77, 82–83, 847 A.2d 1090 (2004) (reviving holding in *Valle* v. *Commissioner of Correction*, supra, 45 Conn. App. 570, to justify application of credit for same calendar days of presentence confinement to concurrent sentences imposed on different dates).

For the reasons set forth herein, we conclude that the respondent accurately interpreted the statutory mandate of § 18-98d when he denied the petitioner credit for 751 days of presentence confinement toward his Hartford II sentence.

II

The respondent next claims that the habeas court improperly concluded that the respondent's method of applying presentence confinement credit violated the equal protection clause[15] because a person sentenced

---

[15] We note that the petitioner, in his amended petition for a writ of habeas corpus, alleged equal protection violations under both the federal and state constitutions. Since the petitioner has not offered an independent analysis of his equal protection claim under the state constitution, "we limit our

to concurrent terms on the same date is treated differently[16] from a person sentenced to concurrent terms on different dates.[17] He argues that the two groups are not similarly situated and that, even if they are, a rational basis exists for the difference in treatment. The petitioner responds that persons sentenced to concurrent terms on the same date and on different dates are similarly situated in relation to § 18-98d because all such persons have been held in custody prior to sentencing and all have been sentenced to concurrent terms. The petitioner further contends that the respondent's construction of § 18-98d directly impinges on the petitioner's fundamental right to liberty and cannot be justified by a compelling state interest. The petitioner

---

review to the relevant federal constitutional claim." (Internal quotation marks omitted.) *State* v. *Wright*, 246 Conn. 132, 138, 716 A.2d 870 (1998).

[16] Although §§ 18-98d and 53a-38b do not facially discriminate against this group of persons, the United States Supreme Court has held that an equal protection violation may arise from a law that is nondiscriminatory on its face but is " 'grossly discriminatory in its operation.' " *Williams* v. *Illinois*, 399 U.S. 235, 242, 90 S. Ct. 2018, 26 L. Ed. 2d 586 (1970).

[17] The petitioner argues that the respondent's "failure to raise the claims or offer any evidence at trial disputing the disparate treatment [of the petitioner relative to a person sentenced on the same date] and alternatively raising new factual arguments to justify the disparate treatment renders those claims unreviewable." We reject this argument for three reasons. First, it is the petitioner, not the respondent, who bears the burden at trial of "attacking the legislative arrangement to negate every conceivable basis which might support it . . . whether or not the basis has a foundation in the record." (Citation omitted; internal quotation marks omitted.) *Heller* v. *Doe*, 509 U.S. 312, 320, 113 S. Ct. 2637, 125 L. Ed. 2d 257 (1993). Second, the question of whether the respondent's construction of § 18-98d violates the equal protection clause by treating similarly situated groups differently is a question of law over which our review is plenary. *State* v. *Long*, 268 Conn. 508, 530, 847 A.2d 862, cert. denied, 543 U.S. 969, 125 S. Ct. 424, 160 L. Ed. 2d 340 (2004); see also *Duperry* v. *Solnit*, 261 Conn. 309, 318, 803 A.2d 287 (2002). Third, the question of whether the petitioner is similarly situated to a person sentenced on the same date was "distinctly raised at trial and was ruled upon and decided by the court adversely to the [respondent's] claim." (Internal quotation marks omitted.) *Copeland* v. *Warden*, 26 Conn. App. 10, 14, 596 A.2d 477 (1991), aff'd, 225 Conn. 46, 621 A.2d 1311 (1993). Consequently, our review of the respondent's arguments on appeal would not amount to an "ambuscade of the [habeas] judge." (Internal quotation marks omitted.) Id.

finally asserts that, even if this court determines that the respondent's methodology does not adversely affect his liberty interest, there is no rational basis for the disparate treatment. We agree with the respondent that the habeas court improperly determined that the "respondent's distinction between concurrent sentences imposed on the same day and concurrent sentences imposed on different days . . . violates the petitioner's right to equal protection under the law."

"We begin by providing the relevant constitutional framework for adjudicating such claims. When a statute is challenged on equal protection grounds . . . the reviewing court must first determine the standard by which the challenged statute's constitutional validity will be determined. If, in distinguishing between classes, the statute either intrudes on the exercise of a fundamental right or burdens a suspect class of persons, the court will apply a strict scrutiny standard [under which] the state must demonstrate that the challenged statute is necessary to the achievement of a compelling state interest. . . . If the statute does not touch upon either a fundamental right or a suspect class, its classification need only be rationally related to some legitimate government purpose in order to withstand an equal protection challenge." (Internal quotation marks omitted.) *Hammond* v. *Commissioner of Correction*, 259 Conn. 855, 877, 792 A.2d 774 (2002).

"[T]he analytical predicate [of consideration of an equal protection claim] is a determination of who are the persons similarly situated." (Internal quotation marks omitted.) *City Recycling, Inc.* v. *State*, 257 Conn. 429, 448, 778 A.2d 77 (2001). We assume, without deciding, that the two classes are similarly situated with respect to the statutory scheme in order to proceed with the equal protection analysis. See *State* v. *Wright*, 246 Conn. 132, 143, 716 A.2d 870 (1998) (court has frequently assumed, for equal protection purposes, that

categories of defendants are similarly situated with respect to challenged statute).

The habeas court, quoting *Payton* v. *Albert*, supra, 209 Conn. 33, concluded that the respondent's "refusal to credit the [petitioner] with jail time affects the period of his confinement and directly impinges on his fundamental right of liberty. . . . Hence his lengthened confinement must be justified by a compelling state interest." (Internal quotation marks omitted.) Thereafter, the habeas court concluded that "[t]here is no justification to prevent application of overlapping days of presentence credit to concurrent sentences, even though the person was sentenced on different days."

The habeas court's reasoning was based on the observation that, under the methodology described in *Payton* v. *Albert*, supra, 209 Conn. 32, if the petitioner's Manchester II and Hartford II sentences had been imposed on the same date, June 16, 2000, the respondent would have calculated the release date by applying 751 days of presentence confinement credit to both informations. This would have resulted in a discharge date of April 27, 2002, for the Manchester II sentence and a discharge date of May 26, 2002,[18] for the Hartford II sentence. Thus, the May 26, 2002 discharge date would have been controlling pursuant to § 53a-38 because the Hartford II sentence was the longest. Because the two sentences were imposed eleven days apart, however, the respondent applied the 751 overlapping days of presentence confinement credit to the first sentence only, Manchester II, leaving no days of presentence confinement credit available to apply to the Hartford II sentence. This resulted in a discharge date of June 25, 2004, for the

[18] This release date is eleven days earlier than June 6, 2002, the date that the petitioner would have been released from his Hartford II sentence, had he received 751 days of credit, because the Manchester II sentencing was eleven days earlier than the Hartford II sentencing, which was on June 27, 2000. See footnote 10 of this opinion.

Hartford II sentence, a difference of more than two years from the discharge date of May 26, 2002, that would have resulted had the sentences been imposed on the same date. The habeas court therefore determined that the *Payton* methodology should have been used to establish the discharge date for the petitioner's concurrent sentences because it would have eliminated this disparity in sentencing results for the Hartford II sentence and protected the petitioner's liberty interest.

Notwithstanding our decision in *Payton*, we explained that "presentence credit is a creature of statute and that, as a general rule, such credit is not constitutionally required." *Hammond* v. *Commissioner of Correction*, supra, 259 Conn. 879; see also *Johnson* v. *Manson*, 196 Conn. 309, 321 n.12, 493 A.2d 846 (1985) ("[t]he credit sought by the petitioner under § 18-98d, statutorily created, is a matter of legislative grace"), cert. denied, 474 U.S. 1063, 106 S. Ct. 813, 88 L. Ed. 2d 787 (1986). Since presentence confinement credits are a matter of legislative grace, the manner in which they are applied to reduce a sentence and the proscription against double counting are properly determined by the legislature. Consequently, "[b]ecause such credit is not constitutionally mandated, it is not one of those few rights deemed so fundamental that the state cannot impinge upon it in the absence of a compelling reason." *Hammond* v. *Commissioner of Correction*, supra, 880. Furthermore, prisoners do not constitute a suspect class; see *Johnson* v. *Daley*, 339 F.3d 582, 585–86 (7th Cir. 2003); *Benjamin* v. *Jacobson*, 172 F.3d 144, 152 (2d Cir. 1999); *Tucker* v. *Branker*, 142 F.3d 1294, 1300 (D.C. Cir. 1998); and this court is not aware of any legal authority to support the conclusion that persons who receive concurrent sentences on different dates represent a suspect class deserving of heightened scrutiny. Accordingly, we turn to an examination of the classifica-

tion at issue to determine whether it is rationally related to a legitimate government purpose.

"[E]qual protection is not a license for courts to judge the wisdom, fairness, or logic of legislative choices. In areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification. . . . The test . . . is whether this court can conceive of a rational basis for sustaining the legislation; we need not have evidence that the legislature actually acted upon that basis. . . . Further, the Equal Protection Clause does not demand for purposes of rational-basis review that a legislature or governing decisionmaker actually articulate at any time the purpose or rationale supporting its classification." (Internal quotation marks omitted.) *Ramos* v. *Vernon*, 254 Conn. 799, 831–32, 761 A.2d 705 (2000). Mindful that "[t]he equal protection clause does not require absolute equality or precisely equal advantages"; *State* v. *Long*, 268 Conn. 508, 534, 847 A.2d 862, cert. denied, 543 U.S. 969, 125 S. Ct. 424, 160 L. Ed. 2d 340 (2004); we conclude that the respondent's method of crediting presentence confinement days when concurrent sentences are imposed on different dates serves the legitimate public purpose of ensuring that a convicted offender serves the full term of each criminal sentence imposed.

In *Holmquist* v. *Manson*, supra, 168 Conn. 393, we stated that "[i]t is not the purpose of [the jail time statutes] to reduce the time a prisoner must serve pursuant to a sentence . . . ." Thus, it is not proper to apply presentence confinement days against an initial sentence, and then apply those same days against a second concurrent sentence imposed thereafter. "To count those days more than once would permit the petitioner to reduce the number of days that he was ordered to

spend in sentenced confinement under both informations simply because he happened to have been held in presentence confinement simultaneously under the two informations. In other words, [such an] application of the statute would permit him to reuse credit for each day that he spent in presentence confinement. Consequently, the petitioner would be able to reduce the aggregate days of sentenced confinement imposed under different informations by more than the number of days that he spent in presentence confinement. Such a consequence runs contrary to the public policy of this state because it has the effect of permitting the petitioner to avoid serving the full term of any criminal sentences imposed against him." *King* v. *Commissioner of Correction*, supra, 80 Conn. App. 587–88. Such a consequence also damages society's perception of the fair administration of justice. See *State* v. *Morales*, 240 Conn. 727, 740, 694 A.2d 758 (1997).

Moreover, the language of the statutes at issue contains no indication that the legislature intended to equalize the treatment of persons sentenced to concurrent terms on the same date and persons sentenced to concurrent terms on different dates. Indeed, to the extent that the two groups are treated differently, the disparity is likely to have the salutary effect of encouraging defendants to enter pleas with respect to other pending charges and to disclose criminal activities for which charges have not yet been filed so that all outstanding matters may be resolved in a single proceeding. The respondent's methodology also may help to conserve scarce judicial resources and reduce the administrative burden on the state by encouraging defendants involved in multiple proceedings to seek a transfer of all pending actions to a single courthouse for sentencing purposes. Sentencing judges cannot be expected to have knowledge of every recent sentence imposed on a defendant and, therefore, the transfer of all pending actions to a

single location would provide the sentencing judge with a better understanding of the defendant's criminal history in order to determine a fair and equitable sentence. Because there is a rational basis for the difference in treatment accorded to persons who receive concurrent sentences on the same date and persons who receive concurrent sentences on different dates, we conclude that the classification does not violate the equal protection clause.

### III

We next consider whether the respondent's method of applying presentence confinement credit to concurrent sentences imposed on different dates violates the equal protection clause on the basis of the petitioner's indigency. The petitioner, in his amended petition for a writ of habeas corpus, claimed an equal protection violation on the ground that he would be incarcerated longer than a person who was able to post bond because he was indigent[19] and unable to post bond. In other words, a person who committed identical crimes and received the same sentences as the petitioner, but who had been able to post bond, would have been incarcerated for just four years and eleven days in order to fulfill the concurrent terms of the Manchester II and Hartford II sentences. Under the respondent's methodology, however, the petitioner will be imprisoned for four years plus the 779 days he spent in presentence confinement and the eleven days he served on the Manchester II sentence prior to the imposition of the Hartford II sentence.

The habeas court rejected the petitioner's indigency theory, and instead found that the respondent's presentence credit method violated the petitioner's right to equal protection on the basis that the petitioner was

---

[19] The petitioner testified at the habeas proceeding that he could not afford an attorney and that a public defender had been appointed to represent him.

similarly situated to persons who had committed the same crimes and had received identical sentences, but had been sentenced on the same date. Despite this ruling, the petitioner urges us to affirm the judgment of the habeas court because the respondent's interpretation of §§ 18-98d and 53a-38b, as applied to the petitioner, infringes on his fundamental right to liberty and discriminates against him on account of his indigency.[20] We conclude that the respondent's method of applying presentence confinement credit does not constitute a violation of the petitioner's right to equal protection on the ground that he is indigent.

We begin our analysis by again assuming, without deciding, that the petitioner is similarly situated to persons who have sufficient means to post bond, thereby avoiding presentence confinement altogether.[21] See

---

[20] The respondent urges us to defer to the habeas court's conclusion that the "disparate treatment is not predicated upon the petitioner's indigency" by characterizing that statement as a factual finding. We read the habeas court's statement to mean that the equal protection violation ascertained by that court was not predicated on a classification based on indigency. Since the classification imposed by the statutory scheme is the "analytical predicate [of consideration of an equal protection claim]"; (internal quotation marks omitted) *State* v. *Moran*, 264 Conn. 593, 606, 825 A.2d 111 (2003); and an equal protection violation presents a question of law, our review of the habeas court's conclusion with regard to indigency is subject to plenary review. *State* v. *Long*, supra, 268 Conn. 530.

[21] We note that the class of persons subject to presentence confinement is not restricted to indigents. The court may deny bail entirely or set the amount of bond above a nonindigent defendant's ability to pay, when release upon a written promise is deemed too great a risk, even with conditions, to assure the defendant's future appearance in court. See General Statutes § 18-98d (a) (1) (B); Practice Book § 38-1. Correspondingly, the factors considered by a bail commissioner or a judicial authority in determining the conditions of a defendant's release do not necessarily result in presentence confinement for all indigent defendants. Under the Connecticut rules of practice, a defendant may be released upon the execution of a written promise to appear without any special conditions or with nonfinancial conditions, such as limitations on travel, that do not implicate the defendant's ability to post bond. See Practice Book §§ 38-3 and 38-4. Examples of factors considered in such decisions include the type of offense committed, the defendant's record of previous convictions, the defendant's past record of

*State* v. *Wright,* supra, 246 Conn. 143. We must consider whether the statutory scheme, as applied to the petitioner, impinges on a fundamental right or operates on him as a member of a suspect class. See *Hammond* v. *Commissioner of Correction,* supra, 259 Conn. 877. As previously noted, the presentence confinement credit sought by the petitioner is created by statute and, consequently, is a matter of legislative grace. See *Johnson* v. *Manson,* supra, 196 Conn. 321 n.12. As a result, the statutory scheme cannot be deemed to infringe on the petitioner's fundamental right to liberty. See *Hammond* v. *Commissioner of Correction,* supra, 880. Moreover, "poverty is not in and of itself a 'suspect classification' for the [purpose] of the equal protection [clause] of the federal . . . [constitution] . . . ." *Moscone* v. *Manson,* 185 Conn. 124, 130, 440 A.2d 848 (1981). A classification based on poverty, however, can become a suspect classification if the statutory scheme enables a state to imprison a defendant beyond the maximum period authorized by statute because of his indigency.

The leading United States Supreme Court case establishing this proposition is *Williams* v. *Illinois,* 399 U.S. 235, 240–41, 90 S. Ct. 2018, 26 L. Ed. 2d 586 (1970). The petitioner in *Williams* was convicted of petty theft and received the maximum penalty under Illinois law, consisting of a term of imprisonment of one year, a $500 fine and $5 in court costs. Id., 236. An Illinois statute provided that if the defendant was unable to pay his court imposed financial obligations at the expiration of his prison term, he could remain in jail to "work off" the debt at a rate of $5 per day. Id. As a result of this statutory scheme, the petitioner remained incarcerated for 101 days beyond the maximum period of confinement set by statute because he could not pay the fine

appearances in court after being admitted to bail, the defendant's family ties and employment record, and the defendant's financial resources, mental condition and community ties. See Practice Book § 38-10.

and court costs of $505. Id., 236–37. The United States Supreme Court held that "an indigent criminal defendant may not be imprisoned in default of payment of a fine beyond the maximum authorized by the statute regulating the substantive offense." Id., 241. Although the court acknowledged that a state has wide latitude in fixing the punishment for crimes, it reasoned that, "once the [s]tate has defined the outer limits of incarceration necessary to satisfy its penological interests and policies, it may not then subject a certain class of convicted defendants to a period of imprisonment beyond the statutory maximum solely by reason of their indigency." Id., 241–42. Thereafter, federal courts expanded the holding in *Williams* to prohibit states from denying presentence confinement credit to a defendant who is held for a bailable offense, is unable to make bail as a result of his indigency and receives the *statutory maximum* sentence for that offense.[22] See *Palmer* v. *Dugger*, 833 F.2d 253, 255–56 (11th Cir. 1987); *Hook* v. *Arizona*, 496 F.2d 1172, 1173–74 (9th Cir. 1974).

Applying the foregoing principle to the present case, we conclude that §§ 18-98d and 53a-38 (b) do not operate on the petitioner as a member of a suspect class because he was not sentenced to the maximum term of imprisonment prescribed by statute for the offenses he committed.[23] In reaching this conclusion, we note that the respondent's refusal to accelerate the petition-

---

[22] Some courts have held that an indigent defendant is constitutionally entitled to presentence confinement credit if he was unable to post bond, even though he did not receive the maximum sentence. See, e.g., *Faye* v. *Gray*, 541 F.2d 665, 668–69 (7th Cir. 1976); *King* v. *Wyrick*, 516 F.2d 321, 323–25 (8th Cir. 1975). The Fifth Circuit, however, has explicitly declined to extend the reach of the *Williams* holding to defendants who have not been sentenced to the statutory maximum penalty. See *Jackson* v. *Alabama*, 530 F.2d 1231, 1237 (5th Cir. 1976).

[23] The maximum term of imprisonment that could have been imposed for the class D felonies involved in the Manchester II and Hartford II sentences was five years. See General Statutes § 53a-35a (7).

er's Hartford II sentence by the 751 days of presentence confinement does not mean that such sentence was *lengthened* beyond its established four year term. The petitioner's presentence confinement days were applied to reduce the length of the Manchester II sentence and thus were no longer available to reduce the Hartford II sentence. Consequently, the defendant will not serve more than the maximum time established for each of the sentences imposed.

Since the statutory scheme neither impinges on a fundamental right nor burdens a suspect class under the facts before us, we must decide whether a rational basis exists for the legislature's determination that each day of presentence confinement credit shall be counted only once under § 18-98d (a) (1) (A), despite the fact that the statutory scheme is likely to expose indigent persons who serve time in presentence confinement to longer periods of incarceration than persons who are not incarcerated prior to sentencing.

As a preliminary matter, we note that even if the respondent were to adopt the petitioner's method of reducing concurrent sentences by the same calendar days of presentence confinement credit, disparities would exist between the duration of concurrent sentences served by persons who post bail and persons unable to post bail. Concurrent sentences vary in each case depending upon a number of factors, including the terms of the concurrent sentences, the presentence confinement days allocable to each sentence, and the sentencing date. In fact, the only way that the respondent could equalize completely the periods of incarceration for indigent and nonindigent persons would be to transfer presentence confinement days unique to one sentence to another sentence for the purpose of establishing the person's discharge date. We noted in *Payton* v. *Albert,* supra, 209 Conn. 33, however, that such transfers are improper because they would allow

prisoners to "bank" credits against uncharged offenses in violation of a compelling policy interest of the state.

Despite these inequalities, we conclude, for all of the reasons discussed earlier, that the statutory scheme is justified by a legitimate public purpose. As the California Supreme Court concluded in a similar case, "[r]ecognizing there is no simple or universal formula to solve all presentence credit issues, our aim is to provide for . . . a construction [of the statute] which is faithful to its language, which produces fair and reasonable results in a majority of cases, and which can be readily understood and applied by [the] courts." *In re Joyner*, supra, 48 Cal. 3d 495. Accordingly, we conclude that the respondent's interpretation of the statutory scheme, as applied to concurrent sentences imposed on different dates, does not violate the equal protection clause of the federal or state constitution on account of the petitioner's indigency.

IV

The respondent next claims that the habeas court improperly concluded that he had violated the prohibition against double jeopardy by not affording the petitioner "recognition for the time he was compelled to remain in custody on the Hartford II docket[s]." The respondent claims that the petitioner was entitled to have each day of presentence confinement counted only once under § 18-98d and that counting the days the petitioner spent in presentence confinement on the Hartford II docket, after those days already had been utilized to reduce the sentence imposed for the Manchester II offenses, would have been in violation of the statute. We agree with the respondent.[24]

---

[24] The respondent argues that the petitioner's failure to address the respondent's double jeopardy claim in his reply brief is an implicit concession that the habeas court improperly found a double jeopardy violation. We disagree. Under the Connecticut Practice Book rules, the appellee's brief "shall contain . . . [a] counter statement of any issue involved as to which the appellee disagrees with the statement of the appellant . . . ." Practice Book § 67-5

The United States Supreme Court has explained that the fifth amendment guarantee against double jeopardy, applied to the states through the fourteenth amendment,[25] gives rise to three separate constitutional protections. *North Carolina* v. *Pearce*, 395 U.S. 711, 717, 89 S. Ct. 2072, 23 L. Ed. 2d 656 (1969). "It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." Id. With respect to the third guarantee, which is the focus of our inquiry, "principles of double jeopardy mandate only that 'punishment already exacted must be fully credited in imposing sentence upon a new conviction for the same offense.' . . . In other words, 'in computing the sentence imposed after conviction upon retrial, credit must be given for time served *under the original sentence.*' " (Citations omitted; emphasis in original.) *Connelly* v. *Commissioner of Correction*, 258 Conn. 394, 411, 780 A.2d 903 (2001), quoting *North Carolina* v. *Pearce*, supra, 716–19. Besides the fact that the petitioner was not retried and convicted for the Hartford II offenses, we fail to see how denying him two days of presentence confinement credit for each day served violates the petitioner's double jeopardy rights. The 751 days of presentence confinement at issue in this appeal

(a). There is no rule, however, that an appellee's failure to reply in its brief to an issue raised by the appellant is an implicit concession that the appellant's claim is meritorious and that the claim should be decided in the appellant's favor. Abandonment of a claim for failure of a party to brief that claim typically occurs when the *appellant* fails to brief properly the claim that is raised on appeal. See *Ward* v. *Greene*, 267 Conn. 539, 546, 839 A.2d 1259 (2004) (The court is "not required to review issues that have been improperly *presented* to [the] court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly." [Emphasis added; internal quotation marks omitted.]).

[25] See *Benton* v. *Maryland*, 395 U.S. 784, 794, 89 S. Ct. 2056, 23 L. Ed. 2d 707 (1969).

do not represent "time served" under the Hartford II sentence because the same days previously were counted as "time served" under the Manchester II sentence. See *Connelly* v. *Commissioner of Correction*, supra, 411. We therefore conclude that the constitutional prohibition against double jeopardy simply is not implicated under the facts of the present case.

V

Finally, the petitioner urges this court to affirm the judgment of the habeas court on alternative due process grounds. The essential thrust of this claim is that the state breached its plea agreement with the petitioner by requiring him to remain incarcerated in excess of four years in order to fulfill the term of his Hartford II sentence. The habeas court, in its memorandum of decision, did not address this contention, nor did it make any findings of fact concerning the terms of the plea agreement, the promises made by the prosecutor, if any, with regard to presentence confinement credit, or the overall intent of the parties in reaching the plea agreement. See *State* v. *Nelson*, 23 Conn. App. 215, 219, 579 A.2d 1104 ("Where, as here, there is a dispute as to the terms of a plea agreement, our analysis turns on 'the real intent of the parties . . . .' *Paradiso* v. *United States*, [689 F.2d 28, 31 (2d Cir. 1982), cert. denied, 459 U.S. 1116, 103 S. Ct. 752, 74 L. Ed. 2d 970 (1983)]."), cert. denied, 216 Conn. 826, 582 A.2d 205 (1990), cert. denied, 499 U.S. 922, 111 S. Ct. 1315, 113 L. Ed. 2d 248 (1991); see also *Santobello* v. *New York*, 404 U.S. 257, 262, 92 S. Ct. 495, 30 L. Ed. 2d 427 (1971) ("when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled"). Since the record is devoid of facts relating to the plea agreement, and the petitioner did not file a motion seeking an articulation of the decision

of the habeas court pursuant to Practice Book § 66-5, we decline to consider this claim on appeal.

The judgment is reversed and the case is remanded with direction to deny the petition.

In this opinion the other justices concurred.